# FOR PUBLICATION



**FILED**

Mar 29 2012, 9:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**KENNETH J. FALK**
ACLU of Indiana
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENT MYERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1104-PL-208 |
| | ) | |
| JAROD COATS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-0906-PL-26932

**March 29, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant/Cross-Appellee, Brent Myers (Myers), appeals the trial court's denial of his cross-motion for summary judgment in favor of Appellee-Plaintiff/Cross-Appellant, Jarod Coats (Coats). Coats cross-appeals the trial court's denial of his motion for partial summary judgment against Myers.[1]

We affirm in part and reverse in part.

## ISSUE

Myers raises three (3) issues on appeal; Coats raises one issue on cross-appeal. Evaluating the issues, we find one issue dispositive and restate as follows: Whether the trial court erred by concluding that genuine issues of material fact existed regarding Myers' personal deprivation of Coats' constitutional rights.

## FACTS AND PROCEDURAL HISTORY

In 1998, Coats was charged with two Counts of battery, one Count of intimidation, and one Count of criminal confinement. No charge involved a child and Coats has never been convicted of a sex offense. In 1999, Coats pled guilty but mentally ill to all Counts and served his sentence at the Department of Correction (DOC). Upon his release in 2000, Coats was informed by representatives of the DOC that he was required to register as a sex offender and that failure to do so was a criminal offense.

---

[1] We held an oral argument in this case on February 21, 2012, at Wabash College in Crawfordsville, Indiana. We thank Wabash College for its hospitality in hosting the argument and counsel for their excellent advocacy.

Indiana law requires persons convicted of a sex or violent offense to report to and register with local law enforcement. Ind. Code § 11-8-8-14. Crimes constituting a sexual or violent offense include, for example, rape, child molesting, criminal confinement involving minors, murder, or voluntary manslaughter. *See* I.C. §§ 11-8-8-4.5; -5. Sex offenders must fulfill a number of obligations, including providing personal information, registering annually, and keeping law enforcement officials apprised of any changes in work or residence. *See* I.C. 11-8-8-8; -11; -14. Sex offender registry information appears on an internet website (Registry). *See* I.C. § 36-2-13-5.5

Coats registered as a sex offender with the Grant County Sheriff's Department under protest since he believed he was not required to register, yet was informed that there was no procedure to contest the registration. Coats' Registry listing erroneously stated that Coats had been convicted of criminal confinement of a person under the age of eighteen. Coats tried a number of times over the years to contact the DOC, and in fact left messages with the DOC to correct the Registry listing. However, Coats was unsuccessful. Following his initial registration, Coats registered annually, including multiple times in 2008 because of changes in address or employment.

The DOC has been responsible for oversight and maintenance of the Registry since July 1, 2006. Myers is the Director of Registration and Victim Services at the DOC. As Director of Registration and Victim Services, Meyers oversees maintenance of the Registry and is responsible for formulating various practices and procedures regarding its administration.

3

In August 2008, Coats, by counsel, contested his sex offender registration. On September 19, 2008, a DOC staff attorney responded that a preliminary investigation did not produce a reason to remove Coats from the Registry. Coats' attorney made additional attempts to remove Coats from the Registry but was unsuccessful.

On April 14, 2009, Coats filed a verified petition for mandate and injunctive and declaratory relief against the DOC in federal court. In May 2009, Coats was removed from the Registry and the federal court case was later dismissed.

On June 9, 2009, Coats filed a complaint for declaratory relief and damages in state court against Myers under 42 U.S.C. § 1983 (§ 1983), alleging that Myers had failed to provide Coats with a procedure to challenge his erroneous listing on the Registry and seeking damages. In 2008, Coats worked for a construction company with its job site at a university. After investigation, university officials requested that Coats be removed from the job site. Coats was removed from the job site in November 2008 and laid off. Additionally, Coats stated that he suffered from distress and embarrassment for having to register as a sex offender.

On June 2, 2010, Coats filed a motion for partial summary judgment. On August 17, 2010, Myers filed a cross-motion for summary judgment. On February 7, 2011, the trial court issued its Order denying the parties' respective motions for summary judgment. The trial court concluded that Coats had a liberty interest in not being mistakenly labeled as a sex offender and that the process to challenge such erroneous listing was inadequate. The trial court also found that Coats had not produced sufficient

4

evidence to show that Myers had deprived Coats of his liberty interest, but also found that there was a genuine issue of material fact as to whether Myers personally deprived Coats of a constitutional right.

On March 7, 2011, Myers sought interlocutory appeal. On March 29, 2011, the trial court certified its February 7, 2011 Order for interlocutory appeal. We accepted his appeal.

Myers now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

This case comes before this court as an interlocutory appeal from the denial of the parties' respective cross-motions for summary judgment. Specifically, Myers appeals the denial of his cross-motion for summary judgment and Coats cross-appeals the denial of his partial motion for summary judgment as to Myers' liability.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). This court reviews the trial court's ruling on summary judgment, standing in the shoes of the trial court and applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. On appeal, this court must determine whether there is a genuine issue of material fact and whether the trial court has correctly

5

applied the law. *Id*. at 607-08. All designated evidence is viewed in the light most favorable to the non-moving party when doing so. *Id*. at 608.

Here, the trial court entered findings of fact and conclusions of law in support of its judgment. However, the trial court's findings on summary judgment are not binding on appeal. *Campbell v. Spade*, 617 N.E.2d 580, 582 (Ind. Ct. App. 1993). Although an aid to appellate review, the trial court's findings and conclusions "merely afford the appellant an opportunity to address the merits of the trial court's rationale." *Id*. This court bases its conclusion "upon the Ind. Trial Rule 56(C) materials submitted to the trial court." *Id*. at 583. Where, as here, the court is faced with cross-motions for summary judgment, it must "consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Great Lakes Transfer, LLC v. Porter Cnty. Highway Dept.*, 952 N.E.2d 235, 240 (Ind. Ct. App. 2011).

II. *Analysis*

A. *42 U.S.C. § 1983*

Coats' § 1983 claim alleges that Myers violated his Fourteenth Amendment Due Process rights under the United States Constitution by failing to afford him a process to challenge his erroneous registration as a sex offender. Section 1983 creates no substantive right of its own, but acts only as a vehicle to afford litigants a civil remedy for deprivation of their federal rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994), *reh'g denied*, 510 U.S. 1215 (1994). To prevail on a § 1983 claim, "the plaintiff must show that (1) the defendant deprived the plaintiff of a right secured by the Constitution and

laws of the United States, and (2) the defendant acted under the color of state law." *J.H. Exrel Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003). For § 1983 claims premised upon a procedural due process violation, we consider two factors: "first, there must be a deprivation of a constitutionally protected liberty or property interest; and second, a determination of what procedural safeguards are then required." *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 120 (Ind. Ct. App. 2003).

### B. *Deprivation of a Liberty Interest*

The trial court's Order found that Coats "had a liberty interest in not being mistakenly labeled as a sex offender and he was therefore entitled to procedural due process to challenge his erroneous registry listing." (Appellant's App. p. 241). In support of its Order, the trial court cited the United States Supreme Court's "stigma plus" test in *Paul v. Davis*, 424 U.S. 693, 701, 708 (1976), to determine that Coats had a liberty interest in not being mistakenly labeled as a sex offender. The stigma-plus test requires that a plaintiff show "(1) the utterance of a statement about him or her that is sufficiently derogatory to injury his or her reputation, that his capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2nd Cir. 2004).

Various federal district and circuit courts have recognized the stigma and change in legal status associated with classification as a sex offender. *See Chambers v. Colo. Dept. of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000). Our supreme court has also

recognized that sex offender registration laws impose "significant affirmative obligations and a severe stigma on every person to whom [they apply]." *Wallace v. State*, 905 N.E.2d 371, 379 (Ind. 2009), *reh'g denied*. In *Wallace*, the supreme court noted "that through aggressive notification of their crimes, [sex offender registration legislation] exposes registrants to profound humiliation and community-wide ostracism." *Id*. at 380.

Here, it is undisputed that Coats was mistakenly told to register as a sex offender and complied with all affirmative obligations imposed under the sex offender registration laws. Mistakenly labeling Coats as a sex offender constituted a derogatory false statement about him, with such statement disseminated publicly through the Registry. Further, Coats' status under state law was altered by his compliance with the substantial disabilities imposed through sex offender registration and notification requirements. *See Wallace*, 905 N.E.2d at 379-80. Coats therefore had a liberty interest in not erroneously being labeled a sex offender. Accordingly, the trial court did not err in granting Coats' motion for partial summary judgment and denying Myers' cross-motion for summary judgment as to this issue.[2]

## C. *Sufficiency of Process*

---

[2] Myers also argued that Coats' claim alleges a deprivation of process rather than deprivation of a liberty interest. We agree with Coats that this argument misses the point. As noted above, Myers admits that Coats' suffered a deprivation of liberty interest by his erroneous classification as a sex offender. Once the deprivation is found to exist, the next inquiry is simply what process is due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

Coats argues that no process was afforded to him to challenge his erroneous classification as a sex offender. Myers contends that even if a deprivation occurred adequate state law remedies existed and thus Coats was afforded sufficient process.

At a minimum, due process requires notice and an opportunity to be heard, with the hearing held at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Ordinarily, due process "requires some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).[3] Myers concedes that "there was no administrative process[4] for Coats to challenge his listing on the [R]egistry," but asserts that Coats was afforded sufficient process through state judicial action to correct his mistaken listing. (Appellant's Br. p. 15).

"[W] here the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, post[-]deprivation remedies might satisfy due process." *Zinermon*, 494 U.S. at 127. Post-deprivation remedies include state tort law remedies. *Id*. at 128. Myers argues that since erroneously labeling an individual as a sex offender is contrary to Indiana law, such conduct was "unpredictable such that Coats was not entitled to any

---

[3] We note that if an individual is actually convicted of a sex offense, the criminal procedure inherent in the conviction of a sex offense constitutes sufficient process. *Conn. Dept. of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003). Here, it is undisputed that Coats was never convicted of a sex offense requiring registration under Indiana law.

[4] In May 2011, the DOC added an administrative appeal to allow for challenges to errors on the Registry. *See Schepers v. Commissioner, Ind. Dept. of Correction*, No. 1:09-cv-01324, 2011 WL 4402538 at *3, *6-8 (S.D. Ind. Sept. 22, 2011).

process prior to being registered." (Appellant's Br. p. 15). Thus, Myers contends that post-deprivation judicial remedies represent sufficient process.

The undisputed facts here establish that the DOC determines whether an incarcerated individual belongs on the Registry and also handles complaints about mistaken sex offender registrations. The DOC conducted its own internal review to assess the validity of such complaints and Myers' discovery responses illustrate these review procedures:

> Once a concern was received (either through a phone call to the [DOC], email or other form of communication), [DOC] staff and/or [DOC] legal counsel would review case information and court documentation to determine if registration was required. If registration was required, a determination was made for the length of the registration. If registration was not required, the individual's record was removed from the registry.

(Appellant's App. p. 121). Thus, the DOC determined whether Coats must register and also addressed whether such a decision was erroneous. Given the DOC's control over determination of whether an incarcerated person registers and whether such a determination is in error, we find this to be analogous to an established state procedure, rather than a random and unauthorized act of a state official. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982).

Accordingly, we next consider what process would be required here using the three-step analysis set forth by the United States Supreme Court in *Mathews*:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional substitute procedural safeguards; and finally, the Government's interest, including the function

10

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, there can be no dispute that Coats has a substantial interest in not being labeled a sex offender. We have previously noted precedent describing the stigma and substantial burden imposed by sex offender registration statutes. *See Wallace*, 905 N.E.2d at 379. Second, the risk of an erroneous deprivation in light of the informal procedure employed by the DOC is significant. Myers testified that the DOC handles the initial registration for incarcerated persons. This necessarily includes the determination whether Coats had committed an offense requiring registration and if so, whether Coats was required to register for ten years or the rest of his life. Local law enforcement officials, in Coats' situation, are only responsible for entering Coats' personal information following his release from incarceration. Further, it is undisputed that Coats was informed that there was no way for him to challenge his mistaken classification. Myers testified that although the DOC received complaints from persons erroneously required to register as sex offenders, no written procedures were in place to systematically rectify erroneous listings. Myers also testified that no systematic files of complaining individuals were kept, despite receiving complaints as often as once a week. Myers could not answer how many times such adjustments to the Registry had occurred and further admitted that "[o]ccasionally, the [DOC] even asked the requester to send us information if they have something that they believe supports their position." (Appellant's App. p. 101).

11

Third, a simple administrative hearing would have provided Coats with the opportunity to challenge the obvious error involved here and would not have been a significant fiscal and administrative burden. Despite Coats' protests and the receipt of documentation establishing that Coats had not been convicted of a crime requiring sex offender registration, a federal lawsuit was required to prompt Coats' removal from the Registry. Compared to the time, expense, and speculative nature of litigation, a limited, informal administrative procedure encompassing the presentation and verification of evidence of the type of error involved in this case would not have posed an undue burden. We therefore conclude that providing an opportunity for a hearing to contest Coats' erroneous sex offender registration would have sufficed to provide Coats with sufficient process. Accordingly, the trial court did not err in concluding that Coats was not afforded due process.

## D. *Personal Deprivation by Myers*

Section 1983 liability depends upon proof of a defendant's personal or supervisory liability. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability requires proof of the defendant's "personal involvement" in a constitutional violation. *Id*. A supervisor may be liable for creation of a policy that causes a plaintiff to be subjected to a constitutional deprivation. *Id*. at 1163-164. In such a case, proof of supervisory liability requires that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the

12

complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1164.

Myers analogizes his role to that of the defendant in *Brown*. Brown filed a § 1983 action against his probation officer and the New Mexico Secretary of Corrections based on his wrongful sex offender registration following Brown's release from incarceration. *Id*. at 1159-60. Brown had earlier prevailed in an action to remove himself from New Mexico's sex offender registry. *Id*. at 1159. In determining that Brown failed to assert how the Secretary of Corrections was personally involved, the circuit court noted that Brown had not alleged that the Secretary told "Brown to register or directed anyone else to make [Brown] register." *Id*. at 1165. Finding that Brown did not assert the Secretary's supervisory liability, the circuit court noted that Brown had failed to allege the first element of responsibility for promulgating a policy by not attaching the same to his complaint. *Id*. at 1166.

By evaluating Myers' personal involvement with Coats' plight and using the *Brown* test for supervisory liability, we find that Coats has not carried his burden to demonstrate that there is a genuine issue of material fact establishing that Myers personally deprived Coats of a liberty interest and failed to afford him sufficient process. There is no evidence of how Myers acted in response to Coats' complaint and it is undisputed that Myers did not know Coats or his situation prior to this litigation. The designated evidence shows that Myers does not review inmate correspondence relating to grievances; that task is delegated to the DOC's legal department or Myers' subordinates.

13

Thus, Coats has not shown facts creating a genuine issue that Myers was personally involved in Coats' matter.

Next, despite Myers' admission that he "formulates, establishes, interprets . . . all policies and procedures related" thereto, it is undisputed that Myers was without the unilateral and final authority to promulgate policy. (Appellant's App. p. 117). Although Coats argues that Myers "was the prime mover" and "because of his failure to create an appeal procedure – a power that was his – [Coats] was injured," it is undisputed that only the DOC Commissioner has the final authority to promulgate any policies. (Appellee's Br. p. 30). Moreover, Myers explained how policies were in practice formulated.

> [MYERS]: I work with other folks in the [DOC], whether that would be a direct supervisor or specifically legal counsel. We draft up documents that we believe are consistent with [the] Indiana Code. And then we ask -- myself and the other individuals in the division, we ask those two different entities, supervisors and legal counsel, whether or not these are appropriate and comply with our obligations.
> [COATS' COUNSEL]: And you've done that before in the sex offender registration area?
> [MYERS]: Yes.
> [COATS' COUNSEL]: And you initiate that and take it to your supervisor and to legal counsel?
> [MYERS]: In most situations. In other situations, they may bring it -- if they're aware of an issue that we need to address, they make[,] bring that issue to us.

(Appellant's App. p. 96). Thus, whatever policy Myers' contributed to or produced was subject to input from supervisors and the DOC legal counsel. This undercuts Coats' argument that Myers was a driving force behind the failure to provide a policy. Thus, Coats has not shown that Myers' "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that "caused the complained of

14

constitutional harm." *Brown*, 662 F.3d at 1165. Accordingly, we find that summary judgment for Myers should have been granted on this issue.[5]

CONCLUSION

Based on the foregoing, we conclude that the trial court erred by concluding that genuine issues of material fact existed regarding Myers' personal deprivation of Coats' constitutional rights. We enter summary judgment in favor of Myers.

Affirmed in part and reversed in part.

KIRSCH, J. and ROBB, C. J. concur

---

[5] Having found this issue dispositive, we need not address the parties' arguments concerning whether Coats' claim is barred by the statute of limitations or whether Myers is entitled to qualified immunity.