Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2014, 7:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW R. WILKINSON**
Gibson Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD LEE MATTHYS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1303-CR-217 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy Williams, Judge
Cause No. 79D01-0403-FA-8

**January 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Edward Lee Matthys (Matthys), appeals his termination from the Tippecanoe County Re-Entry Court Program (Re-Entry Program) and subsequent placement in the Indiana Department of Correction (DOC).

We affirm.

## ISSUES

Matthys raises two issues on appeal, which we restate as:

(1) Whether the hearing conducted by the trial court on June 27, 2012, satisfied the requirements of due process under Indiana Code section 33-23-16-14.5; and

(2) Whether the sentence handed down by the trial court was inappropriate in light of Indiana Appellate Rule 7(B).

## FACTS AND PROCEDURAL HISTORY

On the morning of February 26, 2004, Matthys was arrested in Tippecanoe County, Indiana. He was subsequently charged with one Count of dealing methamphetamine, a Class B felony, Ind. Code § 35-48-4-1(a); one Count of dealing methamphetamine, a Class A felony, I.C. § 35-48-4-1(b); two Counts of dealing in a schedule II controlled substance, a Class B felony, I.C. § 35-48-4-2(a); two Counts of possessing methamphetamine, a Class C felony, I.C. § 35-48-4-6(b)(1)(A); four Counts of operating an illegal drug lab, a Class D felony, I.C. § 35-48-4-14.5(c)(d); two Counts of possessing marijuana, a Class A misdemeanor, I.C. § 35-48-4-11; and resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3(a). On November 19, 2004,

Matthys pled guilty to dealing methamphetamine as a Class B felony, possessing methamphetamine as a Class C felony, dealing methamphetamine as a Class A felony, operating an illegal drug lab as a Class D felony, and possessing marijuana as a Class A misdemeanor.

On February 10, 2005, Matthys received an aggregate sentence of forty years imprisonment, with twenty-six years executed at the DOC, five years suspended to supervised probation, and nine years suspended to unsupervised probation. On August 24, 2011, Matthys was admitted to the Re-Entry Program, and the remainder of his executed sentence was stayed upon his successful completion of the program. On February 24, 2012, Matthys was eighteen minutes late for a mandatory appointment at Riggs Medical Clinic, where the policy states that tardiness of fifteen minutes or more counts as a missed appointment. On March 4, 2012, Matthys failed to appear for a required check-in at Community Corrections. On March 5, 2012, the Re-Entry court advised Matthys that he was being placed in jail for a "time out," and a hearing would follow to determine his status in the Re-Entry Program. (Appellant's App. p. 41).

On May 3, 2012, the State filed a Notice of Termination from Re-Entry Program and Motion for Sentencing. On June 27, 2012, the trial court conducted a hearing on the State's motion. Following this hearing, the trial court ordered each party to submit proposed findings of fact and conclusions of law. The State complied with this order on July 6, 2012. On July 9, 2012, Matthys presented his proposed findings of fact and conclusions of law to the trial court.

On August 30, 2012, the trial court issued an order adopting almost all of Matthys' proposals and conclusions, including his proposed termination from the Re-Entry Program. The trial court's order included the following:

8. The [c]ourt concludes that termination is not an appropriate sanction for the two rule violations that have been shown.
9. The [c]ourt further concludes that although no hearing was conducted by the presiding authority over the Re-Entry . . . Program as provided in Paragraph 3(g) of the Request for Agreed Modification of Sentence and Re-Entry Court Acceptance, the evidence indicates that [Matthys] was terminated from the Re-Entry Program sometime between April 2, 2012 and April 16, 2012. The [c]ourt further concludes that sending [Matthys] back to the Re-Entry . . . Program which has already rejected him is not a feasible option.
10. Accordingly, the [c]ourt does now ORDER [Matthys] remanded to the [DOC] pursuant to his Sentencing Order of February 10, 2005.
11. Pursuant to Indiana Code [section] 35-38-1-17(b), the [c]ourt may modify [Matthys'] sentence to place [Matthys] into Community Corrections at a level to be determined by them for the remaining balance of his executed sentence, and the [c]ourt finds [Matthys] may file a Motion for Modification of Placement for its consideration.

(Appellant's App. p. 43). On September 5, 2012, Matthys filed a Motion for Modification of Placement. On October 9, 2012, the trial court granted Matthys' motion, ordering that the remainder of his sentence be executed in Tippecanoe County Community Corrections.

Matthys now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

For purposes of appellate review, Indiana treats a hearing on a petition to revoke a placement in a community corrections program the same as it does a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999) (footnote omitted)

4

(citing *Brooks v. State*, 692 N.E.2d 951, 953 (Ind. Ct. App. 1998), *trans. denied*). Indiana Code section 35-38-2.6-2 defines a "community corrections" program as "a program consisting of residential and work release, electronic monitoring, day treatment, or day reporting[.]" "Community corrections programs" therefore include the Re-Entry Program in which Matthys was enrolled. *See* I.C. § 33-23-16-8 (defining "problem solving court"); I.C. § 33-23-16-9 (defining "reentry court" as a specific type of problem solving court). The State's burden of proof in probation revocation and similar proceedings is to prove the alleged violations by a preponderance of the evidence. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995). We do not reweigh the evidence, but consider all the evidence most favorable to supporting the judgment of the trial court. *Id.*

## I. Due Process

Matthys contends that he was denied due process because the trial court's hearing on June 27, 2012 was not held until after he had already been effectively terminated from the Re-Entry Program. "A defendant at a probation revocation hearing is not endowed with all the same rights he possessed prior to his conviction." *Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992). Similarly, a defendant facing termination from a problem solving court program is not guaranteed the same due process of law as a defendant facing a revocation of probation. *Compare* I.C. § 33-23-16-14.5 (describing the due process requirements for termination of participation in a problem solving court program), *with* I.C. § 35-38-2-3 (describing the due process requirements for probation revocation).

5

While the two processes are comparable enough to share a standard of review, they are not identical.

Moreover, at no time did the State's action violate the statutory requirements for Matthys' termination from the Re-Entry Program. On March 5, 2012, Matthys was remanded into custody following his alleged violations of Re-Entry Program rules, and pursuant to Indiana Code section 33-23-16-14.5(b)(1). On May 3, 2012, Matthys received written notice of his alleged violations, pursuant to Indiana Code section 33-23-16-14.5(c)(3)(A). On June 27, 2012, the trial court conducted a hearing, pursuant to Indiana Code section 33-23-16-14.5(c), that included Matthys' representation by counsel, the presentation of the evidence against him, and the opportunity to confront and cross-examine witnesses. The trial court subsequently found that Matthys had committed two technical violations of Re-Entry Program rules. Matthys then proposed that regardless of the inappropriateness of his termination, he should not be returned to the Re-Entry Program, and the trial court agreed.

This court has acknowledged that "[o]rdinarily, due process 'requires some kind of hearing *before* the State deprives a person of liberty or property.'" *Myers v. Coats*, 966 N.E.2d 652, 658 (2012) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1976)) (emphasis added). However, section 33-23-16-14.5(c) imposes no temporal requirements, providing only that the "problem solving court judge or other hearing officer shall conduct a hearing concerning an alleged violation." While the timing of operations and ultimate hearing in Matthys' case may have been unorthodox, they were

6

not statutorily prohibited. Furthermore, on June 27, 2012, during the hearing before the trial court, Matthys did not claim he had been denied due process up to that point. Rather, he informed the trial court that it would be hearing the issue of his termination from the Re-Entry Program in addition to the issue of his sentencing. No one questioned the propriety of this course of action, and the trial court recapitulated its agenda before proceeding: "[W]hat we're doing is allowing [the court] to make the decision as to whether or not [Matthys] should be terminated from re-entry and then if so . . . . what we do, does that sound right?" (Transcript pp. 1-2). The record indicates no disagreement on this point. Based on the evidence before us, we cannot conclude that Matthys was denied due process.

## II. Sentencing

Next, Matthys contends that the trial court's sentence was inappropriate. He invokes Appellate Rule 7(B), which states: "The [appellate] [c]ourt may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [appellate] [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We have further clarified that "[b]efore we may revise a sentence, the defendant must 'demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis in original).

While Matthys notes the "technical" nature of his offenses, he offers nothing regarding his character. Instead, he relies solely on the trial court's conclusion that "termination is not an appropriate sanction for the two rule violations that have been shown." (Appellant's App. p. 43). Matthys submitted the following sentencing proposal for the trial court's consideration: "[T]he fairest solution would be to modify [Matthys'] sentence to Community Corrections at a level to be determined by them for a time period that would finish up at about the same time [Matthys] would have graduated from the Re-Entry Program had he not been prematurely rejected." (Appellee's App. p. 10). The trial court, however, rejected this proposal and instead sentenced him to the DOC for the remainder of his sentence. Matthys now attempts to characterize this rejection as inappropriate, claiming that the trial court improperly sentenced him to the DOC "instead of placing Matthys back into the Re-Entry Program." (Appellant's Br. p. 6).

Far from being inappropriate, the trial court's decision to remand Matthys to the DOC was the only legitimate option available. Matthys had signed an agreement prior to his placement in the Re-Entry Program. Section 3(j) of that agreement reads, in relevant part: "[I]n the event of the defendant's rejection from the . . . Re-Entry Program, the defendant's stayed sentence . . . shall be ordered served in the [DOC], without any modification, appeal or post-conviction petition." (Appellant's App. p. 35).[1]

---

[1] In its Brief, the State appears to challenge the subsequent Order for Modification of Placement issued by the trial court on October 9, 2012. However, this issue is not properly before us. Matthys' Notice of Appeal only appeals the "Order Entered on August 30, 2012." (Appellant's App. p. 47). The State did not pursue its own appeal of the Order for Modification of Placement.

Therefore, we conclude that the sentence was not inappropriate, as it was compelled by the agreement that Matthys had signed on August 24, 2011, prior to his admission to the Re-Entry Program.

## CONCLUSION

Based on the foregoing, we conclude that Matthys was not deprived of due process, nor did the trial court sentence him inappropriately.

Affirmed.

MAY, J. concurs

VAIDIK, C.J. concurs in result