# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**ZEFF A. WEISS**
**BRIAN J. PAUL**
**EILEEN P. MOORE**
Ice Miller LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
US ARCHITECTS, LLP:

**EDWARD F. HARNEY, JR.**
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
ALBERT D. BOWEN and JULIE A. BOWEN:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
**BRIAN M. FALCON**
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| JOSEPH D. BARNETTE, JR., and CHARLENE BARNETTE, | ) | |
| | ) | |
| Appellants-Intervenors/Cross-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF CARMEL DEPARTMENT OF COMMUNITY SERVICES, DIVISION OF BUILDING AND CODE SERVICES and THE CARMEL BOARD OF ZONING APPEALS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1304-PL-309 |
| | ) | |
| US ARCHITECTS, LLP, ALBERT D. BOWEN, and JULIE A. BOWEN, | ) | |
| | ) | |
| Appellees-Plaintiffs/Cross-Appellants. | ) | |

**July 25, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Carmel residents Albert D. Bowen and Julie A. Bowen hired US Architects to design what the Carmel Zoning Ordinance ("the Ordinance") categorizes as an accessory building. The Bowens submitted the design plans to the Carmel Department of Community Services ("the DCS"), which issued a building permit and a certificate of occupancy. The Bowens' neighbors, Joseph D. Barnette, Jr., and Charlene Barnette, complained to the DCS about the height of the Bowens' building. The DCS notified the Bowens that their building violated the height limits of the Ordinance and advised them to apply for a variance with the Carmel/Clay Board of Zoning Appeals ("the BZA"), which they did. The BZA denied the variance. The Bowens did not appeal the DCS's determination that their building is too tall, nor did they appeal the BZA's denial of a variance. The DCS again notified the Bowens that their building violated the Ordinance, that they had to bring it into compliance, and that the DCS would be withdrawing the certificate of occupancy. The Bowens did not appeal that determination.

Instead, the Bowens and US Architects (collectively "the Plaintiffs") filed a complaint for declaratory relief against the DCS and the BZA (collectively "the City"), seeking an interpretation of the Ordinance and a determination that their building complied with it. The City filed a motion for judgment on the pleadings based on the Bowens' failure to exhaust their administrative remedies and counterclaimed for both an injunction ordering the Bowens to bring their building into compliance with the Ordinance and a civil penalty for a zoning violation. The Barnettes filed a motion to intervene, which the trial court granted, and joined the City's motion for judgment on the pleadings. The Plaintiffs filed a motion for summary judgment.

After a hearing, the trial court issued an order stating that the Bowens' failure to exhaust their administrative remedies would have been fatal to their claims but for the fact that the DCS had violated their due process rights and that DCS should be estopped from revoking the certificate of occupancy. The trial court also ruled that US Architects did not have standing to bring a declaratory judgment action because it had not suffered an actual injury and could not request guidance for designing future buildings in Carmel. The trial court denied the City's motion for judgment on the pleadings; granted the Plaintiffs' summary judgment motion as to the Bowens and denied it as to US Architects; and ordered the DCS to reissue the certificate of occupancy or provide just compensation to the Bowens. The trial court issued a second order denying the City's counterclaims and entering final judgment in favor of the Bowens. The Barnettes filed a notice of appeal, but the City did not. US Architects cross-appealed the trial court's standing determination.

On appeal, the Plaintiffs contend that the appeal is moot because the Barnettes cannot enforce the Ordinance on the City's behalf. We conclude that the appeal is not moot because a party of record in the trial court is a party on appeal, and we may grant appropriate relief to any party. Also, as intervenors and parties to the judgment, the Barnettes may appeal the trial court's judgment to the extent that it is adverse to the interests that made intervention possible in the first place.

The Barnettes contend that the declaratory judgment action should be dismissed for lack of subject matter jurisdiction because the Bowens failed to exhaust their administrative remedies. We agree. The DCS is not estopped from enforcing the Ordinance because the relevant facts were equally known by or accessible to the Bowens and the City. And because the Bowens failed to exhaust their administrative remedies, which would have afforded them due process, they cannot complain about a due process violation. Therefore, we reverse and remand with instructions to dismiss the Plaintiffs' declaratory judgment complaint as to the Bowens and for further proceedings consistent with this opinion, such as reconsideration of the City's counterclaims.

Finally, US Architects contends that the trial court erred in determining that it lacks standing to bring a declaratory judgment action. Because any injury suffered by US Architects would be derivative of that suffered by the Bowens, and because it may not seek an advisory opinion for guidance in designing future buildings, we affirm the trial court on this issue and remand with instructions to dismiss the Plaintiffs' declaratory judgment complaint as to US Architects.

4

In sum, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**Facts and Procedural History**

The relevant facts are undisputed. In 2010, the Bowens, who live next door to the Barnettes in Carmel, hired US Architects to design what the Ordinance categorizes as an accessory building.[1] The Bowens submitted the design plans to the DCS, which issued a building permit in February 2010. In October 2010, after the Bowens' building was constructed, the DCS issued a certificate of occupancy that contains the following language: "THE BUILDING OFFICIAL IS PERMITTED TO SUSPEND OR REVOKE THIS CERTIFICATE OF OCCUPANY BASED ON ANY OF THE FOLLOWING: 1. WHEN THE CERTIFICATE HAS BEEN ISSUED IN ERROR; 2. WHEN THE INCORRECT INFORMATION IS SUPPLIED; 3. WHEN THE BUILDING IS IN VIOLATION OF THE CODE." Appellants' App. at 89.

The Barnettes complained to the DCS about the height of the Bowens' building, which has a gable roof and no walls adjoining the street. Section 3.07 of the Ordinance defines "building height" in pertinent part as "[t]he vertical distance from the lot ground level … to the mean height between eaves and ridges" for gable roofs. The Ordinance defines "lot ground level" for buildings having no walls adjoining the street as "the average level of

---

[1] Section 3.07 of the Ordinance defines accessory building in pertinent part as "[a] Building subordinate to another Structure or Use located on the same Lot which is not used for permanent human occupancy."

the ground adjacent to the exterior walls of the Building." *Id.* Section 25.01.01B of the

Ordinance limits the height of accessory buildings to eighteen feet.

In March 2011, the DCS sent a letter to the Bowens that reads in pertinent part as

follows:

> This letter is being provided to inform you that our department received a complaint regarding the height of the accessory structure that was recently completed on your property. Upon review, it has come to our attention this complaint is valid. We believe the original building permit was issued in error. According to the building plans that were submitted the structure is eight feet taller than is permitted. In order to comply with the Carmel/Clay Zoning Ordinance §25.01.01B, it will be necessary for you to file an application for a Development Standards Variance. Enclosed is the application along with a flow chart explaining the process.

*Id*. at 99.

Indiana Code Section 36-7-4-918.1 provides that appeals from "any order, requirement, decision or determination made by an administrative official, hearing officer, or staff member under the zoning ordinance" shall be heard and determined by a board of zoning appeals. An appeal "must be filed within such time and in such form as may be prescribed by the board of zoning appeals by rule." Ind. Code § 36-7-4-919(a). Section 30.01 of the Ordinance provides that appeals shall be filed within thirty days of the action being appealed. The Bowens did not appeal the DCS's determination that their building was too tall.

Instead, on the advice of and with the assistance of the DCS, the Bowens applied for a variance with the BZA. On the Bowens' behalf, the DCS submitted proposed findings recommending approval of the variance. But after a hearing in April 2011, the BZA denied

6

the variance, finding that the building "is approximately 36.5 feet in height";[2] "is visible from adjoining properties and thereby adversely affects the general welfare of the community as it is unsightly and not harmonious with a[cc]essory buildings related to adjoining residential homes"; and has a "material adverse impact on the value of adjoining properties[.]" Appellants' App. at 143. At that time, Indiana Code Section 36-7-4-1003 allowed persons "aggrieved" by a decision of a board of zoning appeals to appeal to the county circuit or superior court within thirty days of the board's decision. The Bowens did not appeal the BZA's decision.

On June 3, 2011, the DCS sent a letter to the Bowens that reads in pertinent part as follows:

> Your accessory building is currently in violation of the Carmel Zoning Ordinance height requirements and must be brought into compliance right away.
>
> Please respond by Monday, June 13, 2011 to this letter so that we may know your plans to remedy the violation. The Department will be withdrawing the previously granted certificate of occupancy for this structure, and allow a total of 60 days from receipt of your response to complete the building remodel.

Appellants' App. at 144. The Bowens did not appeal this determination.

Instead, in September 2011, the Plaintiffs filed a complaint for declaratory relief against the City, seeking an interpretation of Section 25.01.01B of the Ordinance and a determination that the Bowens' building complied with it, as well as a stay of any zoning

---

[2] We agree with the City that this measurement represents the absolute height of the building, not the building height as defined in the Ordinance. *See* Appellants' App. at 91 (elevation drawing showing roof peak at thirty-seven feet "above grade"); *id*. at 102 (same drawing with handwritten notation of height as 36.5 feet).

enforcement proceedings pending the resolution of the declaratory judgment action.[3] In its answer to the Plaintiffs' complaint, the City asserted that the Bowens had failed to exhaust their administrative remedies and that one or more of the Plaintiffs lacked standing to file the complaint. The City also counterclaimed for an injunction and a civil penalty for a zoning violation. Specifically, pursuant to Indiana Code Section 36-1-6-4, the City requested an injunction "ordering the Bowens to take appropriate action to bring the accessory building into compliance with the Zoning Ordinance[.]" *Id*. at 31.[4] The Plaintiffs answered and asserted estoppel as an affirmative defense.

Thereafter, the City filed a motion for judgment on the pleadings based on the Bowens' failure to exhaust their administrative remedies. The Barnettes filed a motion to intervene as of right pursuant to Indiana Trial Rule 24, alleging that the Bowens' building "has severely compromised [their] view and has diminished the value of [their property]." *Id*. at 49-50.[5] The Plaintiffs did not object, and the trial court granted the Barnettes' motion.

---

[3] *See* Ind. Code § 34-14-1-2 ("Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.").

[4] Indiana Code Section 36-1-6-4 provides that a municipal corporation may bring a civil action if a person "violates an ordinance regulating or prohibiting a condition or use of property" and that a court may "take any appropriate action," including "[i]ssuing an injunction" or "[o]rdering a defendant to take appropriate action to bring a property into compliance with an ordinance within a specified time."

[5] *See* Ind. Trial Rule 24(A) ("Upon timely motion anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties.").

The Plaintiffs filed a response to the motion for judgment on the pleadings and a memorandum in support of a motion for summary judgment, which stated,

> At issue in the Declaratory Judgment Action is the proper interpretation of the phrase "Lot Ground Level." The interpretation of "Lot Ground Level" factors into the calculation of the building's height for purposes of determining compliance with the subject ordinance. Here, DCS issued the Bowens both a building permit and a Certificate of Occupancy, certifying that the building met local ordinances and building code. Then, five months after issuing the Certificate of Occupancy, DCS completely reversed itself and re-interpreted "Lot Ground Level" to be measured from a point 6 feet from an adjacent wall. (Exhibit B-2).[6] DCS never articulated any basis for selecting the 6 foot measurement, and could not identify any regulation in the applicable building code or ordinances for the 6 foot measurement. Accordingly, this declaratory judgment action is appropriate to provide clarity on the subject ordinance and for the Court to determine whether the accessory building complies with the proper interpretation of this ordinance.

*Id*. at 61. The Plaintiffs asserted that for purposes of calculating the height of an accessory building, the lot ground level should be "the average of the elevation of the land surrounding the primary residence." *Id*. at 65.

The Barnettes filed a response to the Plaintiffs' summary judgment motion, which the City joined, and also joined the City's motion for judgment on the pleadings. In their summary judgment reply brief, the Plaintiffs asserted for the first time that the DCS "effectively revoked" the Bowens' certificate of occupancy "without notice or opportunity to be heard" and thereby violated their due process rights. *Id*. at 164. The Plaintiffs also asserted for the first time that the Ordinance is "unconstitutionally vague and did not provide fair warning to either US Architects or the Bowens of its requirement that the lot ground

---

[6] This exhibit is a letter dated June 27, 2011, from the DCS to the Bowens and an "attached graphic" illustrating the DCS's method of calculating a building's height. Appellants' App. at 97-98.

9

level is an average of the elevation of an imaginary line six feet from the adjacent wall of an accessory structure." *Id*. at 159-60. They further asserted that US Architects has standing to bring a declaratory judgment action "because the Bowens have made a claim against US Architects for remodeling costs to comply with [the] DCS's interpretation of the ordinance"[7] and because US Architects, "as an architectural firm, also needs to ascertain whether [the] ordinance is constitutional and/or if its interpretation of the ordinance is correct for future buildings it may design to be built within the City of Carmel." *Id*. at 159.

After a hearing, the trial court issued an order in which it concluded that the Bowens' failure to exhaust their administrative remedies would have been fatal to their claims but for the following considerations: (1) the DCS's revocation of their certificate of occupancy "without notice, hearing or just compensation" violated their due process rights; and (2) the DCS should be estopped from revoking the certificate because the Bowens "did in fact reasonably rely upon the issuance of [the building permit and certificate of occupancy] to their detriment by commencing and completing construction and by occupying the structure, only to be told nearly six months later that the accessory structure violated the applicable ordinance." *Id*. at 12, 14. The court further concluded that US Architects lacked standing to bring the declaratory judgment action because it had not suffered the denial of a property interest or an actual injury; the court deemed the Bowens' claim against US Architects as too speculative and stated that "[a] request for future guidance is not an actual, present,

---

[7] According to the Plaintiffs, however, the Bowens did not actually file a lawsuit against US Architects until after the trial court issued its order. Appellees' Br. at 12 n.4.

justiciable controversy." *Id*. at 17. Consequently, the court granted the Plaintiffs' summary judgment motion as to the Bowens and denied it as to US Architects. The court also denied the City and the Barnettes' motion for judgment on the pleadings. Based on its finding of a due process violation, the court ordered the DCS to "immediately reissue the Certificate of Occupancy and/or provide just compensation as required by law." *Id*. at 13. In a subsequent order, the court denied the City's counterclaims and entered final judgment in favor of the Bowens.

The Barnettes now appeal, but the City does not. US Architects cross-appeals the trial court's determination regarding its lack of standing.

## Discussion and Decision

### Section 1 – Is This Appeal Moot?

As a threshold matter, we first address the Plaintiffs' contention that this appeal is moot because the City did not file a notice of appeal and the Barnettes, as private citizens, cannot enforce the Ordinance on its behalf. Pursuant to Indiana Appellate Rule 17(A), a party of record in the trial court shall be a party on appeal. "'The rule operates of its own force to make all parties in the trial court parties on appeal, whether such parties participate actively or not.'" *Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 162 (Ind. Ct. App. 2006) (quoting *State v. Nixon*, 270 Ind. 192, 194, 384 N.E.2d 152, 153 (1979)), *trans. denied*. Pursuant to Indiana Appellate Rule 66(C), "with respect to some or all of the parties or issues, in whole or in part[,]" we may affirm or reverse the trial court's decision or "grant any other appropriate relief." And we have "held that where a party is

11

permitted to intervene in a lawsuit under Indiana Trial Rule 24, that party may appeal a decision adverse to its interests even if the original party or parties decide to forego the pursuit of an appeal; the case is not moot." *Hoosier Outdoor*, 844 N.E.2d at 161 (citing *City of New Haven v. Chem. Waste Mgmt. of Ind., LLC*, 685 N.E.2d 97, 102 (Ind. Ct. App. 1997), *trans. dismissed* (1998)).

Based on the foregoing, we agree with the Barnettes that "[t]he fact that the City is the party that brought the enforcement action, and not the Barnettes, is irrelevant[,]" and that, as parties to the trial court's judgment and this appeal, they "are entitled to pursue and receive an effective appellate remedy, independent of the City's ability to do so." Appellants' Reply Br. at 7, 6; *see City of New Haven*, 685 N.E.2d at 102 (denying landfill operator's motion to dismiss intervenor city's appeal from partial judgment in favor of landfill operator in county's zoning enforcement action, where county settled with landfill operator after filing appeal: "The City's status as a party to the lawsuit and the judgment rendered therein does not end merely because the original parties decided to settle their claims and to forego the pursuit of an appeal. Dismissal of the suit as between the original parties does not render moot the City's claims. There is no indication that the City has failed to meet the procedural requirements to bring an appeal to this court. As a party to the judgment …, the City has the right to appeal that judgment to the extent that it is adverse to those interests which made

intervention possible in the first place. This court has subject-matter jurisdiction over the City's appeal ….").[8]  Therefore, this appeal is not moot, and we will address the merits.

### Section 2 – Should the Bowens' Complaint Have Been Dismissed for Failure to Exhaust Administrative Remedies?

This mention of subject matter jurisdiction brings us to our next point.  The Barnettes contend that the trial court should have dismissed the Plaintiffs' declaratory judgment complaint as to the Bowens for lack of subject matter jurisdiction because the Bowens failed to exhaust their administrative remedies.  It is true that such a failure has been found to implicate a court's subject matter jurisdiction.  *See Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000) ("Failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction."), *amended on reh'g*, 737 N.E.2d 719.[9]  For that

---

[8]  We are unpersuaded by the Plaintiffs' reliance on *Annexation Ordinance F-2008-15 v. City of Evansville*, 955 N.E.2d 769 (Ind. Ct. App. 2011), *trans. denied* (2012), an annexation case that is procedurally and factually distinguishable.

[9]  In *K.S. v. State*, 849 N.E.2d 538 (Ind. 2006), our supreme court wrote,

> Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs.  Personal jurisdiction requires that appropriate process be effected over the parties.
>
> Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack.  Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

*Id*. at 540.  There is no question that the trial court has the power to hear and determine declaratory judgment cases such as the one filed by the Bowens.  In light of *K.S.*, it seems to us that a party's failure to exhaust administrative remedies should be considered a type of legal error (i.e., procedural default) that has nothing to do with a court's subject matter jurisdiction.  But a recent opinion from our supreme court suggests otherwise. *See Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1154 (Ind. 2013) (addressing argument that trial court lacked subject matter jurisdiction because plaintiff "failed to exhaust available administrative remedies before filing her claim" under Wage Payment Act without determining whether such failure implicates subject matter jurisdiction).  Until our supreme court brings further clarity to this area, we will follow their most recent precedent on the subject.

13

reason, instead of filing a motion for judgment on the pleadings, the City should have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1). *See Peavler v. Mitchell & Scott Mach. Co.*, 638 N.E.2d 879, 880 (Ind. Ct. App. 1994) (stating that defendant should have filed motion to dismiss instead of motion for judgment on the pleadings to attack trial court's subject matter jurisdiction). The standard of review for such motions is a function of what occurred in the trial court. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). Where, as here, the relevant facts are not in dispute, the question of subject matter jurisdiction is purely one of law, and we review the matter de novo. *Id*.

We agree with the Barnettes that the trial court should have dismissed the Plaintiffs' declaratory judgment complaint as to the Bowens because they failed to exhaust their administrative remedies. According to our supreme court, "It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts." *Parker*, 726 N.E.2d at 1224. Where "an administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative." *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010).

The exhaustion doctrine is supported by "strong policy reasons and considerations of judicial economy[.]" *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind. 1995).

> The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action … and to ensure the efficient, uninterrupted progression of administrative proceedings

14

and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review."

*Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 982 (Ind. 2005) (quoting *Austin Lakes*, 648 N.E.2d at 644 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

Established administrative procedures may not be bypassed simply because a party raises a constitutional issue; otherwise they could be circumvented "by the mere allegation of a constitutional deprivation." *Ind. State Dep't of Welfare v. Stagner*, 410 N.E.2d 1348, 1353 (Ind. Ct. App. 1980).[10] Even if the basis of the party's complaint "is the unconstitutionality of [a] statute, which may be beyond the agency's power to resolve, exhaustion may still be required because 'administrative action may resolve the case on other grounds without confronting broader legal issues.'" *State Bd. of Tax Comm'rs v. Montgomery*, 730 N.E.2d 680, 684 (Ind. 2000) (quoting *State v. Sproles*, 672 N.E.2d 1353, 1358 (Ind. 1996)). The same can be said for a challenge to the constitutionality of a zoning ordinance.

The exhaustion requirement is not without exceptions, however. *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 931 (Ind. Ct. App. 1998), *clarified on reh'g*, *trans. denied* (1999). For example, a party is excepted from the requirement "when some equitable consideration precludes application of the rule." *Id.* Here, the trial court essentially determined that the exhaustion requirement was precluded by estoppel.

The party who claims that the doctrine of equitable estoppel applies must show (1) a lack of knowledge as to the facts in question and of the means of acquiring that knowledge; (2) reliance upon the conduct of the party estopped;

---

[10] The same holds true for claims of estoppel. *Stagner*, 410 N.E.2d at 1354 n.5.

and (3) a prejudicial change in position based upon the conduct of the party estopped.

*LaGrange Cnty. Reg'l Util. Dist. v. Bubb*, 914 N.E.2d 807, 811 (Ind. Ct. App. 2009).

"Estoppel is not generally applicable against government entities for the actions of public officials." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570, 581 (Ind. 2007). "The reason behind the rule is two-fold. If the government could be estopped, then dishonest, incompetent or negligent public officials could damage the interests of the public. At the same time, if the government were bound by its employees' unauthorized representations, then government, itself, could be precluded from functioning." *Samplawski v. City of Portage*, 512 N.E.2d 456, 459 (Ind. Ct. App. 1987).

The Barnettes point out that "[e]stoppel cannot be applied if the facts are equally known by or accessible to both parties," *City of Crown Point v. Lake Cnty.*, 510 N.E.2d 684, 687 (Ind. 1987), and that "[p]roperty owners are charged with knowledge of ordinances that affect their property." *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 64 (Ind. 2004). We agree with the Barnettes that the Bowens thus were charged with knowing what the maximum height for accessory buildings is pursuant to the Ordinance and that height is "measured based on the average level of the ground adjacent to the exterior walls of the accessory building, not the primary residence." Appellants' Br. at 38. Plaintiffs' argument to the contrary is unsupported by the plain language of Section 3.07 of the Ordinance, which refers to the exterior walls of "the Building," not "the primary residence." The reasonableness of the City's "6 foot measurement" practice and the constitutionality of the Ordinance could have and should have been litigated at the administrative level. Notably,

16

the Bowens do not contend that their building would have complied with the Ordinance if the lot ground level had been measured closer to its exterior walls. In sum, because the Barnettes failed to establish an essential element of estoppel, we conclude that the trial court erred in determining that the City is estopped from enforcing the Ordinance.[11]

And as for the Bowens' due process claim, we simply observe that exhausting their administrative remedies would have afforded them all the process that they were due. "At a minimum, due process requires notice and an opportunity to be heard, with the hearing held at a meaningful time and in a meaningful manner." *Myers v. Coats*, 966 N.E.2d 652, 658 (Ind. Ct. App. 2012). Pursuant to statute, the Bowens had two opportunities to appeal from and be heard on the DCS's determination that their accessory building is too tall[12] and an opportunity to appeal from and be heard on the BZA's denial of a variance, and they failed to take advantage of any of those opportunities. As such, they cannot complain that they were denied due process.

Based on the foregoing, we conclude that the Plaintiffs' declaratory judgment complaint should be dismissed as to the Bowens for lack of subject matter jurisdiction due to

---

[11] Because the relevant facts were equally known by or accessible to both the City and the Bowens, and because the Bowens did not exhaust their administrative remedies, we are unpersuaded by the estoppel cases cited in the Plaintiffs' brief, which are procedurally and factually distinguishable.

[12] As stated above, the Bowens sought a variance from the BZA on the advice of the DCS instead of appealing the DCS's initial determination that their building is too tall. Our supreme court has said,

> When the legislature enacts procedures and timetables which act as a precedent to the exercise of some right or remedy, those procedures cannot be circumvented by the unauthorized acts and statements of officers, agents or staff of the various departments of our state government. All persons are charged with the knowledge of the rights and remedies prescribed by statute.

*Middleton Motors, Inc. v. Ind. Dep't of State Revenue*, 269 Ind. 282, 285, 380 N.E.2d 79, 81 (1978).

their failure to exhaust their administrative remedies. Therefore, we reverse and remand with instructions to dismiss the Plaintiffs' declaratory judgment complaint as to the Bowens and for further proceedings consistent with this opinion, such as reconsideration of the City's counterclaims for an injunction and a civil penalty.[13]

## Section 3 – Does US Architects Have Standing to Seek a Declaratory Judgment?

Simply put, no.

The doctrine of standing focuses on whether the complaining party is the proper person to invoke the Court's power. The standing requirement restrains the judiciary to resolving only those controversies in which the complaining party has a demonstrable injury. In order to establish standing, a plaintiff must show that he or she has sustained, or was in immediate danger of sustaining, some *direct* injury as a result of the conduct at issue.

*Regan v. Uebelhor*, 690 N.E.2d 1222, 1225-26 (Ind. Ct. App. 1998) (citations omitted), *trans. denied*. Here, any injury that US Architects would suffer as a result of the City's interpretation of the Ordinance would be entirely derivative of that suffered by the Bowens, who should have litigated the matter at the administrative level. And, as the trial court correctly observed, US Architects may not seek an advisory opinion for guidance in designing future buildings in Carmel. *Liberty Landowners Ass'n v. Porter Cnty. Comm'rs*, 913 N.E.2d 1245, 1252 (Ind. Ct. App. 2009), *trans. denied* (2010). Therefore, we affirm the trial court's denial of the Plaintiffs' summary judgment motion as to US Architects and

---

[13] The Barnettes contend that they may enforce the Ordinance if the City "on remand abdicates its duty" to do so. Appellants' Reply Br. at 15. Because this possibility is speculative, we decline to address the Barnettes' contention.

remand with instructions to dismiss the Plaintiffs' declaratory judgment complaint as to US

Architects.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and NAJAM, J., concur.