

ATTORNEYS FOR APPELLANTS

Matthew T. Albaugh
Shawn M. Doorhy
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
TOWN OF LONG BEACH,
INDIANA[1]

L. Charles Lukmann, III
Charles F.G. Parkinson
Julie A. Paulson
Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEYS FOR APPELLEE
LONG BEACH COMMUNITY
ALLIANCE, INC.

Kurt R. Earnst
Braje, Nelson & Janes, LLP
Michigan City, Indiana

Patricia F. Sharkey
Environmental Law Counsel,
P.C.
Chicago, Illinois

ATTORNEY FOR APPELLEE
JAMES NEULIEB

Gregory S. Colton
Law Office of Gregory S. Colton
Valparaiso, Indiana

ATTORNEYS FOR AMICUS CURIAE,
INDIANA ASSOCIATION OF CITIES
AND TOWNS AND

---

[1] The attorneys identified as counsel for Town of Long Beach, Indiana also represent the Town Council, Building Commission, Advisory Plan Commission, Board of Zoning Appeals, and the following people in their respective official capacities: Jane Starr Neulieb, Peter Byvoets, Robert Lemay, Larry Wall, John Wall, Joseph Jogmen, Patrick Cannon, Michael Gorman, and Aaron Tomsheck.

INDIANA MUNICIPAL LAWYERS
ASSOCIATION

Brian W. Welch
Melissa J. Buckley
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
CONSERVATION LAW CENTER

Jeffrey B. Hyman
Conservation Law Center
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John C. & Maureen G. Osborne Revocable Family Trust; Timothy J. and Anna Voortman; Christopher Lyons; and Duneland Development, LLC, | May 30, 2017 |
| | Court of Appeals Case No. 46A03-1607-PL-1698[3] |
| *Appellants/Cross-Appellees-Plaintiffs,* | Appeal from the LaPorte Superior Court |
| v. | The Honorable Richard R. Stalbrink, Jr., Judge |
| The Town of Long Beach, Indiana; The Long Beach, Indiana Town Council; The Building Commission of the Town of Long Beach, Indiana; The Advisory Plan Commission | Trial Court Cause No. 46D02-1602-PL-204 |

[3] This appeal was consolidated with Case No. 46A03-1607-PL-1725, a separate appeal filed by The Long Beach Community Alliance, Inc. and James Neulieb. Following consolidation, this court directed that The Long Beach Community Alliance and Neulieb would be considered appellees/cross-appellants for purposes of the appeal.

of the Town of Long Beach; The Board of Zoning Appeals of the The Town of Long Beach, Indiana; Jane Starr Neulieb; Peter Byvoets; Robert Lemay; Larry Wall; John Wall; Joseph Jogmen; Patrick Cannon; Michael Gorman; and Aaron Tomsheck, all in their official capacities as members of the Long Beach, Indiana Town Council, Advisory Plan Commission, Board of Zoning Appeals, Building Commission, and Building Commissioner,[2]

*Appellees/Cross-Appellants-Defendants,*

and

The Long Beach Community Alliance, Inc., an Indiana not-for-profit corporation; and James Neulieb, an Individual,

*Appellees/Cross-Appellants-Defendants.*

**Kirsch, Judge.**

---

[2] Town of Long Beach, its Town Council, its Building Commission, and office of Building Commissioner filed a Notice of Succession in Office and a Motion to Substitute Party pursuant to Appellate Rule 17(C). This court accepted the Notice and granted the Motion, ordering that Larry Wall replaced Aaron Tomsheck as the Building Commissioner and as an Appellee in this case.

John C. & Maureen G. Osborne Revocable Family Trust, Timothy J. & Anna Voortman, and Christopher Lyons (together, "Homeowners") each own a residence along the Lake Michigan shoreline in Long Beach, Indiana. Each Homeowner sought to construct a seawall due to concern about a possible breach of their respective septic systems by Lake Michigan waters. After building permits were issued to Homeowners for the seawalls, The Long Beach Community Alliance, Inc. ("LBCA")[4] and James Neulieb[5] ("Neulieb") each filed an administrative appeal of the building permits with the Board of Zoning Appeals of the Town of Long Beach ("BZA"), and, thereafter, stop work orders were issued, which prevented construction on the seawalls from proceeding. Homeowners and their contractor, Duneland Development, LLC ("Duneland" and, together with Homeowners, "Plaintiff Owners") filed in the trial court a twelve-count complaint for declaratory and injunctive relief ("the Complaint") against The Town of Long Beach, Indiana, the Town Council, the Building Commission, the Advisory Plan Commission, the BZA, certain individuals in their official capacities as members of the aforementioned municipal entities (collectively, "Town Defendants"), as well as LBCA and Neulieb. Thereafter, the Town Defendants, LBCA, and Neulieb each filed a motion to dismiss,

---

[4] LBCA describes itself as "a 501(c)(3) not-for-profit community organization, representing over 400 families who live and/or own homes in the Town of Long Beach, including some who own property on the lakefront and/or in close proximity to the proposed seawall locations. LBCA's mission includes preserving the character of the Lake Michigan shore in the Town of Long Beach, on behalf of its members." *LBCA Br.* at 22.

[5] James Neulieb is member of and provides financial support to the LBCA; his wife, Jane Starr Neulieb, also a named defendant, is a member of the Long Beach Town Council.

which the trial court denied by orders on April 8 and April 19, 2016 (together, "the April Orders"). On July 5, 2016, the trial court issued an "Order Denying [Plaintiff Owners'] Motions for Injunctive Relief and Declaratory Judgment" ("the July 5 Order").

[2] On July 29, 2016, Plaintiff Owners filed, pursuant to Indiana Appellate Rule 14(A) or 14(D), an appeal as of right of the July 5 Order, which Plaintiff Owners view as an interlocutory order. On or near the same time, LBCA and Neulieb, who view the July 5 Order as a final order that disposed of all claims, filed an appeal of the April 19 Order that denied their respective motions to dismiss. This court consolidated LBCA's and Neulieb's appeal with Plaintiff Owners' appeal.[6]

[3] Numerous issues are raised by the consolidated appeal. We first address the following preliminary issue:

> I. Whether this court has subject matter jurisdiction to hear the cross-appeal issues raised by appellees LBCA, Neulieb, and Town of Long Beach concerning the trial court's denial of their respective motions to dismiss in the April Orders.

We next address the following dispositive cross-appeal issue:

---

[6] Following consolidation, Plaintiff Owners filed a motion to dismiss the appeal filed by LBCA and Neulieb, and LBCA filed a motion to dismiss the appeal filed by Plaintiff Owners. LBCA and Neulieb also filed a motion for a temporary stay of appellate proceedings and remand for limited purpose. This court denied both of the motions to dismiss, and it denied the motion for stay of proceedings.

II.  Whether the trial court erred when it denied the motions to dismiss filed, separately, by Town Defendants, LBCA, and Neulieb, each of which asserted that the trial court lacked subject matter jurisdiction because Plaintiff Owners failed to exhaust their administrative remedies.

We reverse the trial court's April 8 Order that denied the motions to dismiss filed by Town Defendants, LBCA, and Neulieb.

## Facts and Procedural History

This litigation stems from Homeowners' desire to build a seawall on each of their respective lakefront residential lots, which are located on Lake Shore Drive in the Town of Long Beach, at the southern shore of Lake Michigan.[7] Homeowners maintain that storms and waves have damaged their properties and have put their septic systems in imminent peril of being breached; they assert that construction of the seawalls is necessary to avoid discharge of septic contents onto the beach and into Lake Michigan and to protect their properties. Homeowners also claim that, without the seawalls, their homes could be damaged to the point of being uninhabitable, and no new septic field could be constructed given the size of their lots. Before applying for building permits, the Homeowners filed applications in May and July, 2015 with the BZA, asking for a variance from the view protection ordinance found in the Town Code at

---

[7] The John C. and Maureen G. Osborne Revocable Family Trust owns 2822 Lakeshore Drive, Timothy J. and Anna Voortman own 2826 Lakeshore Drive, and Christopher Lyons owns 2900 Lakeshore Drive, all in the Town of Long Beach, Indiana.

154.060.[8] The BZA held public hearings on the proposed development standards variances on August 13, October 13, November 10, November 24, and December 8, 2015.

[6] During the public hearings, Homeowners presented testimony from a contractor, a surveyor, an engineer, and an appraiser regarding Homeowners' claim that there was an urgent need for the seawalls. Neulieb and LBCA, among others, posed oral and written objections to the seawalls asserting, among other things, that the seawalls would be located in fragile dune and floodplain locations and could accelerate or cause beach erosion of Lake Michigan beaches and dunes that, according to LBCA, "are held in trust for Long Beach residents as members of the public by the State of Indiana and as Long Beach homeowners by the Town of Long Beach," as well as those beaches and dunes "which are owned by neighboring private property owners, including LBCA members." *LBCA Br*. at 22-23; *LBCA Addendum* at 30. In November 2015, Homeowners' engineer, in response to the erosion concerns, wrote a letter to the BZA stating that "[t]he seawalls as proposed will not adversely affect the surrounding areas" and "do not present [] erosion risks[.]" *Appellants' App*. Vol. II at 89-90. At the conclusion of the December 8, 2015 hearing, the BZA granted Homeowners' requested variance from the view

---

[8] Section 154.060 prohibits the placement or erection of a "dwelling, accessory use, building, or structure" beyond a "view protection line" that lies 106.60 feet north of the northern boundary of the public right-of-way for Lake Shore Drive.

protection ordinance, Long Beach Ordinance 154.060.[9] *Id.* at 56. The BZA's December 8, 2015 decision included findings that "construction of the proposed seawall[s] is an absolute necessity to avoid discharge of septic contents . . . as well as to protect the [Homeowners'] propert[ies]" and that "[t]he proposed design of the seawall[s] is the minimum design (size, location, height, etc.) necessary to prevent a septic discharge and other property damage." *Id*. at 97-98, 104-05, 111-12. No party appealed that decision.

[7] On December 14, 2015, each of the three Homeowners filed an application with the Building Commission for a building permit for a proposed seawall. On December 30, 2016, the then-Building Commissioner, Aaron Tomsheck, approved the applications and issued a building permit to each of the three Homeowners ("Building Permits"). The next day, Homeowners commenced construction efforts, which continued for the next month and included bringing in equipment, purchasing steel sheet piling, excavating, and driving sheet piles into the ground.

---

[9] At the November 24, 2015 hearing, counsel for Homeowners confirmed that "the ordinance for which we're asking a variance is the view protection ordinance. It's not the beach protection ordinance or the sand erosion ordinance. It's designed to protect . . .the views from adjacent properties of the lake. Nothing else." *LBCA Br*. at 23 (citing to *LBCA Addendum* at 8 (transcript of Nov. 24, 2015 BZA hearing)); *see also Neulieb App*. at 139, 192.

On January 25, 2016, LBCA filed administrative appeals to the BZA, pursuant to Indiana Code section 36-7-4-918.1[10] and Long Beach Ordinance 154.153[11] challenging the legality of the three Building Permits issued on December 30, 2015. LBCA challenged the legality of the issuance of the three Building Permits on the basis that not all Long Beach ordinances had been complied with and Homeowners had not obtained all needed variances including those to comply with the following Long Beach Ordinances: 154.072 regarding accessory uses and structures; 154.112 regarding changes in dune topography; 154.091 regarding special BZA approval of construction within a regulated floodplain; Chapter 155 governing construction in floodplains, including specifically the requirements to obtain a floodplain permit and comply with the

---

[10] Indiana Code section 36-7-4-918.1 provides, in part:

> The board of zoning appeals shall hear appeals from and determine appeals from and review: (1) any order, requirement, decision, or determination made by an administrative official, hearing officer, or staff member under the zoning ordinance; . . . (3) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of an ordinance adopted under this chapter requiring the procurement of an improvement in relation to location or occupancy permit.

[11] Long Beach Ordinance 154.153(A)(1) states:

> The Board of Zoning Appeals shall have the following powers and it shall be its duty to . . . hear and determine appeals from and review any order, requirement, decision, or determination made by an administrative official or staff member made in relation to the enforcement of the zoning ordinance, subdivision ordinance, and the enforcement of the building and occupancy permits as adopted under IC 36-7 et seq. and all sections therein applicable.

General Standards in 155.50; and Chapter 156 governing storm water management planning to avoid diversion of floodwater onto neighboring properties, acceleration of erosion, and sediment transport and disposition. *Appellants' App*. Vol. II at 174-215.

[9] The same day, Neulieb also filed an administrative appeal challenging the three building permits, asserting that the permits were issued in violation of the side-yard setback requirement of Long Beach Ordinance 154.077, which requires that structures be placed no closer than six feet from the side property lines; the Homeowners' building plans indicated that their proposed seawalls would be built within one foot of the side property lines, contrary to the ordinance. *Id*. at 217-18.

[10] On January 26, 2016, the then-Building Commissioner Aaron Tomsheck ("Tomsheck") issued a stop work order for each of the building permits pursuant to automatic stay provisions of Indiana Code section 36-7-4-1001(a) triggered by the filing of the administrative appeals.[12]

[11] On February 2, 2016, Plaintiff Owners filed the Complaint in the trial court against the Town Defendants, LBCA, and Neulieb (together, "the

---

[12] Indiana Code section 36-7-4-1001(a) states, in relevant part: When an appeal from the decision of an official or board has been filed with the BZA, proceedings and work on the premises affected shall be stayed unless the official or board certifies to the BZA that, by reason of the facts stated in the certificate, a stay would cause imminent peril to life or property.

Defendants"). *Appellants' App.* Vol. II at 46-82. The Complaint contained six counts for declaratory judgment and six counts for injunctive relief:

Count I: Declaratory judgment that the BZA lacked authority to consider LBCA's January 26, 2016 administrative appeal regarding the propriety of the building permits issued to Homeowners;

Count II: Declaratory judgment that LBCA lacked standing to file its administrative appeals;

Count III: Injunction to enjoin the BZA from taking any action on LBCA's administrative appeal;

Count IV: Declaratory judgment that the BZA lacked authority to consider Neulieb's January 26, 2016 administrative appeal regarding the propriety of the building permits issued to Homeowners;

Count V: Declaratory judgment that Neulieb lacked standing to file his administrative appeal;

Count VI: Injunction to enjoin the BZA from taking any action on Neulieb's administrative appeal;

Count VII: Declaratory judgment that the stop work orders (issued pursuant to Indiana Code section 36-7-4-1001(a) upon the filing of the administrative appeals) were invalid;

Count VIII: Injunction to enjoin Town Defendants from enforcing allegedly invalid stop work orders;

Count IX: Declaratory judgment that certain individually named defendants (Jane Starr Neulieb, Larry Wall, John Wall, Peter Byvoets, Robert Lemay, Patrick Cannon, Joseph Jogmen, and Michael Gorman) each had conflicts of interest with the Plaintiffs due to association with LBCA and were disqualified from participating in municipal activities relating to Plaintiffs' construction of their seawalls, including participating in BZA, APC, and Town Council proceedings related to the administrative appeals;

Count X: Injunction to enjoin defendants Jane Starr Neulieb Larry Wall, John Wall, Peter Byvoets, Robert Lemay, Patrick Cannon, Joseph Jogmen, and Michael Gorman, from participating in their official capacities in any municipal activities relating to Plaintiffs' construction of their seawalls, including participating in the administrative appeals or the appointment of new or replacement members on the BZA;

Count XI: Injunction to enjoin the Defendants from communicating with the BZA regarding proceedings related to the construction of seawalls or to the building permits, if communications would violate Town of Long Beach Zoning Ordinance § 154.153(B); and

Count XII: Injunction to enjoin the Defendants from unlawfully interfering with the construction of Homeowners' seawalls.

*See Appellants' Br.* at 34-35 (summarizing counts). The next day, Plaintiff Owners filed an Application for Temporary Restraining Order and Preliminary Injunction ("Application").

[12] At the BZA's February 9, 2016 meeting, three members[13] of the BZA recused themselves from considering the administrative decision appeals filed by LBCA, citing a possible conflict of interest pursuant to Indiana Code section 36-7-4-909(A)(1). *Appellants' App*. Vol IX at 89-93 (transcript reflecting that Michael Gorman, John Kocher, and Meg Kanyer recused themselves); *see also LBCA Addendum* at 24. In March 2016, individuals were appointed to replace those who had recused themselves, pursuant to Indiana Code section 36-7-4-907 and -909 and Long Beach Ordinance 154.153. *Id*. at 157.

[13] On February 26, 2016, LBCA filed with the trial court a motion to dismiss, asserting that the Plaintiff Owners' lawsuit sought to prevent LBCA and its members from exercising their constitutionally protected rights to petition for review of the building permits, and, therefore, it constituted a Strategic Lawsuit Against Public Participation ("SLAPP") brought to deter public opposition to the proposed seawalls. LBCA asked the trial court to dismiss the Complaint pursuant to Indiana's Anti-SLAPP statutes, Indiana Code chapter 34-7-7. LBCA's motion to dismiss also sought dismissal of the Complaint (1) pursuant to Trial Rule 12(b)(6) for failure to state an actionable claim against LBCA or any other defendant and (2) for lack of jurisdiction due to the Plaintiff Owners' "attempt to circumvent [the] pending administrative proceeding" and failure to

---

[13] It appears that, at some point, John Wall also recused himself, for a total of four recusals. *Appellants' App*. Vol. IX at 157 (March 21, 2016 Town Council minutes reflecting that John Wall also previously recused).

exhaust administrative remedies as required by Indiana Code 36-7-4-1604 and 36-7-4-1016(a). *LBCA App.* Vol. III at 2.

[14] Neulieb also filed a motion to dismiss the Complaint, similar in substance to that filed by LBCA, asking the trial court to dismiss the Complaint pursuant to Indiana's Anti-SLAPP statutes and alleging that the trial court lacked jurisdiction over the subject matter due to Homeowners' failure to exhaust administrative remedies.

[15] On March 14, 2016, the Town Defendants filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1) and 12(B)(6). With regard to T.R. 12(B)(1), Town Defendants argued that the trial court lacked subject matter jurisdiction because the Homeowners had failed to exhaust their administrative remedies. *Town's App.* Vol. II at 7-9, 14-17. With regard to T.R. 12(B)(6), the Town Defendants argued that the Complaint failed to state a cause of action against certain Town Defendants, including the Town Council, the Advisory Plan Commission, Jane Starr Neulieb, and Patrick Cannon. *Id.* at 8-9, 17-20.

[16] Meanwhile, in the BZA proceedings, Tomsheck issued on March 16, 2016, Certificates of Imminent Peril and rescinded the stop work orders, but the next day, Tomsheck issued a second set of stop work orders, one for each property, on the basis that "the plans submitted for the seawall[s] do not comply with the 6 ft. side yard setbacks required in the R-2 zone[,]" and the seawalls required an additional variance from the side-yard setback regulations found in Town Code

section 154.057. [14] *Neulieb App*. Vol. II 83-85; *Appellants' App*. Vol. VI at 108-110.

[17] On March 24, 2016, the Homeowners filed with the trial court an Emergency Application for Immediate Entry to Temporary Restraining Order Without a Hearing, which sought temporary injunctive relief to resume construction of the seawalls, asserting that relief was necessary to avoid irreparable harm to Homeowners and their properties.

[18] On April 8, 2016, the trial court entered an Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction ("April 8 Order"), which concerned the arguments that Plaintiff Owners failed to exhaust administrative remedies before filing their Complaint. Thereafter, on April 19, 2016, the trial court entered an Order Denying LBCA's and Neulieb's Motions to Dismiss Relating to the Indiana Anti-SLAPP Statute. LBCA and Neulieb asked the trial court to certify the April 19 Order for appeal.

[19] The trial court held evidentiary hearings on March 18, April 8, May 2, and June 2-3 on the pending motions. On July 5, 2016, the trial court entered three separate orders, two of which are pertinent to this appeal. One was the July 5 Order, titled "Order Denying Plaintiffs' Motions for Injunctive

---

[14] Plaintiff Owners state that Tomsheck disagreed with the application of the setback ordinance to seawalls, and that Tomsheck issued statements to Homeowners and to the Town's Advisory Plan Commission that the setback requirement had not been applied in the past to seawalls in the Town of Long Beach and this interpretation would not be consistent with the manner in which the ordinance had been applied to other landowners. *Appellants' Br.* at 38.

Relief and Declaratory Judgment," which addressed claims in the Complaint and denied the declaratory and injunctive relief sought. Regarding the Plaintiff Owners' requests for declaratory relief, the trial court concluded that "because Defendants have a clear vested right to appeal '[a]ny decision of the Building Commission concerning the issuance of an improvement location permit . . . when the decision in question[] involves a permit issued in conflict with another existing provision of the Zoning Code . . .' pursuant to Long Beach Ordinance Section 151.04, this Court cannot grant declaratory judgment." *Appellants' App.* Vol. II at 41. It further stated that granting declaratory judgment would "abridge Defendants' right to appeal to the BZA" and granting the Plaintiff Owners' requested relief "would be unjust[.]" *Id.* at 42.

[20] With regard to the injunctive relief sought by Plaintiff Owners, the trial court addressed the requests for injunctive relief in the Complaint and stated, "Nothing presented precludes the Defendants from exercising their right to appeal the decision of a Building Commissioner concerning the issuance of a permit that is in conflict with another existing provision of the zoning ordinance." *Id.* at 44. It explained that it would not grant injunctive relief because:

> (1) Plaintiffs' remedies at law are adequate because they have a chance to litigate the issues to the BZA and to subsequently file for judicial review of the BZA's findings of the Appeals if the findings are not in their favor; (2) Plaintiffs cannot currently demonstrate a reasonable likelihood of success on the merits as this Court has not been presented with the full and complete

facts, namely the findings of the pending BZA hearing of the Appeals; (3) the threatened injury to the Plaintiffs does not outweigh the threatened harm a grant of relief would occasion upon the defendant [sic], namely the harm resulting from abridging the Defendants' right to appeal; and (4) the public interest would be disserved because granting injunctive relief is not in the public interest to deny the Defendants' right to appeal.

*Id.* at 44-45.

[21] The trial court also issued the second pertinent order titled, "Order Denying Long Beach Community Alliance's and James Neulieb's Respective Motions to Request Certification for Interlocutory Appeal" ("Order Denying Certification"), which denied LBCA and Neulieb's request for certification of the trial court's April 19 order that denied their respective motions to dismiss. LBCA and Neulieb had requested certification primarily on the issue of the trial court's rejection of their claim that the Complaint constitutes a SLAPP lawsuit and should be dismissed under Indiana's Anti-SLAPP statutes. In the Order Denying Certification, the trial court rejected LBCA's and Neulieb's claims that (1) if the April 19 order was not certified, each would suffer substantial expense and damage, and (2) the April 19 order involves a substantial question of law. The trial court stated that because its July Order "renders the Interlocutory Appeal request irrelevant[,]" "the remedy by appeal is not otherwise inadequate." *Town's App.* Vol. II at 94.

[22] Meanwhile, as proceedings on Plaintiff Owners' Complaint progressed in the trial court, including discovery and briefing and hearings on various motions, the BZA continued to move forward with LBCA's and Neulieb's administrative appeals. Hearings were held, and the parties presented argument, evidence, and testimony. On June 29, 2016, the BZA entered an Order with specific Findings and Decisions rescinding the Building Commissioner's issuance of the three Building Permits on the basis of failure to demonstrate compliance with Long Beach Ordinances 154.191 and 154.112. *Appellants' App.* Vol. IX at 122-46. In July 2016, Homeowners filed a petition for judicial review of the BZA's June 29 Findings and Decision.[15] *Id.* at 2-27.

[23] On July 29, 2016, Plaintiff Owners filed with this court their notice of appeal, identified as an interlocutory appeal as of right pursuant to Trial Rule 14(A) or 14(D), appealing the trial court's July Order that denied injunctive and declaratory relief. LBCA and Neulieb each filed with this court a notice of appeal, on July 28 and August 3, 2016, respectively, appealing the April 19

---

[15] Initially, the Plaintiff Owners filed their petition for judicial review in the trial court under the same cause number as their Complaint; however, in August 2016, they filed "a separate but virtual[ly] identical" petition for judicial review under a new cause number, in response to objections that it could not be filed in the ongoing trial court cause. *Appellants' Br.* at 42. At an August 25, 2016 hearing on pending motions (including Plaintiff Owners' motion to reconsider the July 5 Order), counsel for James Neulieb voiced opposition to "being brought into" the petition for judicial review case, because Neulieb had withdrawn his administrative appeal and was not a necessary party and because it possibly could have delayed his appeal of the anti-SLAPP issues. *Appellants' Suppl. App.* Vol. VI at 193-94; *Appellants' App.* Vol. X at 39-40, 51. The record reflects that Neulieb withdrew his administrative appeal on June 14, 2016. *Appellants' App.* Vol. VIII at 202. On September 13, 2016, Plaintiff Owners filed an Indiana Trial Rule 41(A)(2) Motion to Dismiss James Neulieb, which the trial court granted the next day. *Appellants' Suppl. App.* Vol. VI at 197-98.

Order that denied their Anti-SLAPP motions to dismiss the Plaintiff Owners'
Complaint. They maintain that the April Order was rendered a final order (and
was no longer interlocutory) by virtue of the trial court's July Order and the
Order Denying Certification. This court consolidated the appeals.

## Discussion and Decision

### *Overview of Parties' Positions*

[24] Appellants/Plaintiff Owners (Homeowners and Duneland) and the three
Appellees (Town Defendants, LBCA, and Neulieb), together, raise a number of
issues and cross-issues.[16] Very generally summarized, the claims of the various
parties are as follows: Plaintiff Owners assert that they "had no choice but to
seek a declaration . . . [and] narrowly tailored injunctive relief . . . to prevent
immediate irreparable harm" and that the trial court erred when, in the July
Order, it denied their request for injunctive and declaratory relief. *Appellants'
Reply Br.* at 17. In support of their claims, the Plaintiff Owners also raise and
address related issues of standing, res judicata, and conflicts of interest. The
Town of Long Beach, LBCA, and Neulieb contend that the trial court erred
when, in the April Orders, it denied their respective motions to dismiss the
Complaint, which sought dismissal on various bases, including that (1) Plaintiff
Owners failed to exhaust administrative remedies when they filed their

---

[16] We note the extensive volume of the appellate record in this case. Between all the parties, a combined ten briefs, totaling approximately 420 pages, and twenty-seven appendices were filed, in addition to exhibits and transcripts.

Complaint and, therefore, the trial court lacked subject matter jurisdiction, (2) the Complaint violated Indiana's prohibition against lawsuits that are Strategic Lawsuits Against Public Participation, and (3) Plaintiff Owners failed to state a cause of action against some of the named defendants.

[25]     Amicus Curiae Indiana Association of Cities and Towns ("IACT") and Indiana Municipal Lawyers Association ("IMLA") filed a brief in support of Appellee Town Defendants. IACT and IMLA asserted that they an interest in the outcome of the present case, not particularly because of the subject seawalls, but because of the presence of zoning issues and procedures that IACT and IMLA membership regularly encounter. IACT and IMLA argue that the trial court erred when, in its April 8 Order, it denied the Town Defendants' motion to dismiss that alleged that Plaintiff Owners' failed to exhaust administrative remedies. IACT and IMLA urge that Plaintiff Owners "filed suit for declaratory judgment and sought preliminary injunctive relief before the administrative process was complete" and that, by doing so, Plaintiff Owners attempted to circumvent Indiana's "orderly, statutorily prescribed [zoning] process." *IACT and IMLA Br.* at 6. Alternatively, IACT and IMLA request that we affirm the trial court's July 5 Order that declined to grant the requested injunctive or declaratory relief to Plaintiff Owners. Amicus Curiae Conservation Law Center filed a brief in support of Appellee LBCA, maintaining that the Plaintiff Owners' Complaint constitutes a SLAPP suit and that the trial court should have granted LBCA's motion to dismiss under Indiana's Anti-SLAPP statute.

# I. Jurisdiction and the July Order

[26] We first address whether we possess subject matter jurisdiction over the cross-appeal issues that challenge the trial court's April Orders that denied Defendants' respective motions to dismiss.

[27] Subject matter jurisdiction is "'the power to hear and determine cases of the general class to which any particular proceeding belongs.'" *HRC Hotels, LLC v. Metro. Bd. of Zoning Appeals Div. II of Marion Cty.*, 8 N.E.3d 203, 206 (Ind. Ct. App. 2014) (quoting *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006)). The authority of our appellate courts to exercise jurisdiction is generally limited to appeals from final judgments. Ind. Appellate Rules 4(A)(1), 5(A); *Ramsey v. Moore*, 959 N.E.2d 246, 253 (Ind. 2012). "Whether the order was a final judgment governs the appellate courts' subject matter jurisdiction[.]" *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003).

[28] Plaintiff Owners assert that there has been no final judgment, and, therefore, this court does not have subject matter jurisdiction over the cross-appeal issues raised by Town Defendants, LBCA, and Neulieb, which challenge the trial court's April Orders that denied their respective motions to dismiss. Plaintiff Owners maintain that the July 5 Order is an interlocutory order, and thus Town Defendants, LBCA, and Neulieb cannot appeal the prior, interlocutory and uncertified April Orders. LBCA, Neulieb, and Town Defendants each assert, separately from each other but in similar fashion, that the July 5 Order is a final

judgment, and therefore, they may appeal the trial court's earlier April 8 and April 19 orders that denied their respective motions to dismiss.[17]

[29] We note that the issue of whether this court has jurisdiction over the cross-appeals of Town Defendants, LBCA, and Neulieb has been presented to this court, when after filing the appeal, but before briefing, the Plaintiff Owners moved to dismiss the appeal filed by LBCA and Neulieb. Plaintiff Owners asserted that the July 5 Order was interlocutory, not final, and LBCA and Neulieb could not appeal the prior, April 19 uncertified order. The motions panel of this court denied the Plaintiff Owners' motion to dismiss.

[30] As we have recognized, "'It is well established that we may reconsider a ruling by the motions panel.'" *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406, 407 (Ind. Ct. App. 2007) (quoting *Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8, 12 (Ind. Ct. App. 2006), *trans. denied*). Thus, "Even though our motions panel has already ruled on this issue," Plaintiff Owners are "not precluded from presenting [their] arguments to us." *Id*. Although we are reluctant to overrule orders decided by the motions panel, we have inherent authority to reconsider any decision while an appeal remains in fieri. *Id*.

---

[17] We note that during the pendency of this appeal, Town Defendants, LBCA, and Neulieb filed a Joint Motion for Temporary Stay of Appeal Proceedings and Remand to Trial Court for Limited Purpose, to remand for the limited purpose of clarifying whether the July 5 Order was or was not a final judgment that disposed of all relief requested by Plaintiff Owners. The motions panel of this court denied the Joint Motion.

"Succinctly stated, a final judgment 'disposes of all issues as to all parties thereby ending the particular case'" and "[i]t leaves nothing for future determination." *Georgos*, 790 N.E.2d at 451 (quoting *Doperalski v. City of Michigan City,* 619 N.E.2d 584, 585 (Ind. Ct. App. 1993)). "This doctrine is now formalized in Indiana Rule of Appellate Procedure 2(H), which provides that a judgment is final if, "it disposes of all claims as to all parties[.]" *Id.* (citing Ind. Appellate Rule 2(H)).

In support of their position that we do not have subject matter jurisdiction over the cross-appeal issues concerning the April Orders, Plaintiff Owners assert that, here, the July 5 Order stated that it was denying a motion, it used a preliminary (not permanent) injunction standard, and it did not enter final judgment. *Appellants' App*. Vol. II at 31-45. Plaintiff Owners also argue that the July 5 Order did not dispose of all claims, as it made no findings regarding the claim that LBCA lacked standing or regarding conflicts of interest of and disqualification of certain defendants.

LBCA, Neulieb, and the Town Defendants maintain that the July 5 Order, although captioned as a denial of motions for injunctive and declaratory relief, was a final order and should be considered a final judgment under Indiana Appellate Rule 2(H), which lists four different types of final judgments, along with a "catch-all" provision for "all judgments otherwise deemed final by law." They further assert that, although Plaintiff Owners characterize the July 5 Order as denying their Application for temporary injunctive relief, the July Order never even mentions the Application; rather, it expressly and repeatedly

references the Complaint, expressly walks through the counts of the Complaint, and denies the relief requested. They point out that the trial court's "Analysis" tracks the Complaint claims and is divided into a section titled "A. Declaratory Judgment" and a section titled "B. Injunctive Relief." *Id*. In the "Declaratory Judgment" section of the July 5 Order, the trial court paraphrased the declaratory relief sought in Counts I, II, IV, V, VII and IX of the Complaint. After doing so, it stated:

> 32. This Court finds that . . . because Defendants have a clear vested right to appeal "[a]ny decision of the Building Commission concerning the issuance of an improvement location permit. . . when the decision in question[] involves a permit issued in conflict with another existing provision of the Zoning Code[]" pursuant to Long Beach Ordinance Section 151.04, this Court cannot grant declaratory judgment.
>
> . . . .
>
> 34. Moreover, "[t]he determinative factor of this [granting declaratory judgment] is whether the declaratory judgment will result in a just and more expeditious and economical determination of the entire controversy." . . . Since granting declaratory judgment would abridge Defendants' right to appeal to the BZA, this Court believes that granting Plaintiff [Owners]' requested relief would be unjust, regardless of how expeditious or economic.

*Appellants' App*. Vol. II at 41-42.

[34] Then the July Order paraphrased the language in Counts III, VI, VIII, X, XI, and XII of the Complaint for injunctive relief and stated:

41. This Court echoes its findings above. Nothing presented precludes the Defendants from exercising their right to appeal the decision of a Building Commissioner concerning the issuance of a permit that is in conflict with another existing provision of the zoning ordinance.

*Id.* at 44. The trial court determined that Plaintiff Owners failed to meet any of the four factors necessary to obtain injunctive relief, concluding, "This Court will not grant injunctive relief." *Id.* Town Defendants, LBCA, and Neulieb argue that, considering the trial court's manner of analysis and reference to the Complaint, the July Order "disposes of all claims as to all parties" and is a final judgment as defined under Appellate Rule 2(H)(1).

[35] They urge that their "final order" interpretation is supported by the Order Denying Certification, also issued on July 5, which denied LBCA's and Neulieb's request asking the trial court to certify the April 19 Order that denied their anti-SLAPP motions to dismiss. The Order Denying Certification stated that the July Order rendered their request for certification "irrelevant[.]" *LBCA App.* Vol. V at 16. "The only way to interpret that statement is that the trial court considered its July 5 Judgment Order to be final." *Town Defendants' Br.* at 21. That is, Defendants contend, certification was no longer necessary in order for LBCA and Neulieb to bring their Anti-SLAPP appeals.

[36] We agree with LBCA, Neulieb, and Town Defendants that the July 5 Order "disposes of all claims as to all parties" and thus constitutes a final judgment as

defined under Appellate Rule 2(H)(1).[18] We are not persuaded by the Plaintiff Owners' arguments, including that, because the trial court referred in the July 5 Order to a preliminary injunction standard of review, the trial court only ruled on Plaintiff Owners' Application for injunctive relief. The language of the July 5 Order, along with the accompanying Order Denying Certification, indicate that the trial court intended to address and deny the claims of the Complaint, not the relief sought in the Application, and that the Defendants had the right to appeal the issuance of the permits to the BZA.[19] Accordingly, we find that we have subject matter jurisdiction to hear the cross-appeal issues concerning the trial court's April Orders that denied the motions to dismiss filed by LBCA, Neulieb, and Town Defendants.[20]

---

[18] Alternatively, Town Defendants assert that the July Order is final and appealable pursuant to section 1 of Indiana's Uniform Declaratory Judgment Act, which states:

> Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect. The declaration has the force and effect of a final judgment or decree.

Ind. Code § 34-14-1-1. *See Town Defendants' Br.* at 20. Because we resolve the issue under Appellate Rule 2(H)(1), we do not reach the UDJA argument.

[19] To the extent that Plaintiff Owners argue that the trial court, without notice, improperly converted a preliminary injunction hearing to a hearing on the merits and that they were thereby denied due process, we find that the trial court conducted at least five hearings on the matter of injunctive and declaratory relief and that the Plaintiff Owners were not denied due process.

[20] LBCA asserts that, if we determine that the July 5 Order is a final order, then we should dismiss Plaintiff Owners' appeal, given that they sought appeal of the July 5 Order pursuant to Indiana Appellate Rule 14(A), an appeal as of right from an *interlocutory* order denying preliminary injunctive relief. Our motions panel denied to dismiss LBCA's motion to dismiss Plaintiff Owners' appeal on this basis, as do we.

## II. Orders Denying Cross-Appellants' Motions to Dismiss

[37] Having found that this court has jurisdiction, we next address the trial court's April Orders ruling on the motions to dismiss.[21] The Town Defendants' motion to dismiss alleged that the trial court lacked subject matter jurisdiction because Plaintiff Owners failed to exhaust administrative remedies before filing their Complaint for declaratory and injunctive relief in the trial court, and it asked the trial court to dismiss Plaintiff Owners' Complaint under Trial Rule 12(B)(1). LBCA's and Neulieb's respective motions to dismiss argued primarily that Plaintiff Owners' Complaint should be dismissed because it constituted a SLAPP lawsuit and should be dismissed on that basis, but argued, alternatively, that the Complaint should be dismissed for Plaintiff Owners' failure to exhaust administrative remedies.

[38] In their motion, Town Defendants argued that Plaintiff Owners' Complaint was filed "in a clear attempt to usurp the BZA's statutory authority." *Town Defendants' App.* Vol. II at 14-15 (citing *Advantage Home Health Care, Inc. v. State Dept. of Health*, 829 N.E.2d 499, 503 (Ind. 2005)). They urged that it was not appropriate for Plaintiff Owners to seek declaratory and injunctive relief in the trial court at that stage of the proceedings, and rather, the "correct procedure"

---

[21] Town Defendants suggest that, before addressing the propriety of the trial court's denial of LBCA's and Neulieb's anti-SLAPP claims of their motions to dismiss, and before addressing the Plaintiff Owners' allegations of error concerning the denial of injunctive and declaratory relief, this court should, in the interest of judicial economy, first address the cross-appeal issues asserting that Plaintiff Owners failed to exhaust administrative remedies "because resolution of the preliminary jurisdictional issues will . . . conserve judicial resources." *Town Br.* at 21. We agree.

was for Plaintiff Owners to have the BZA consider the administrative appeals that had been filed by LBCA and Neulieb:

> Plaintiff [Owner]s are entitled to make all of their arguments regarding the deficiencies of the administrative appeals they have enumerated in their Verified Complaint directly to the BZA. While the Plaintiff [Owner]s claim that the administrative appeals contain various defects, those claimed defects must be first considered by the BZA. After the BZA has made a final decision on the administrative appeals, if the Plaintiff [Owner]s disagree with the decisions at that time they would be entitled to file a petition for judicial review of the decision pursuant to Ind. Code 36-7-4-1604(a).

*Id.* at 16 (Town Defendants' memorandum of law in support of motion to dismiss).

[39] On April 8, the trial court issued its Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction and denied the three motions to dismiss with regard to the allegations that the trial court lacked jurisdiction because Plaintiff Owners had failed to exhaust administrative remedies.[22] In its decision, the trial court relied on Plaintiff Owners' arguments that: (1) the variance that they applied for and received was for them to build a seawall; (2) the BZA considered Plaintiff Owners' plans and applications and granted the variance on December 8, 2015; (3) and because none of the Defendants appealed the

---

[22] The April 8 Order addressed only the failure to exhaust arguments, and not the anti-SLAPP arguments that had been raised by LBCA and Neulieb; the trial court denied the anti-SLAPP claims by separate order on April 19.

December 8, 2015 findings, those findings are res judicata and cannot be attacked by LBCA's and Neulieb's administrative appeals. *See Appellants' App.* Vol. V at 193; *LBCA App.* Vol. IV at 67. Plaintiff Owners argued that "requiring them to return to the processes of the BZA would be allowing an *ultra vires* action." *Appellant's App.* Vol. V at 193. In the April 8 Order, the trial court reasoned that it possessed jurisdiction because Plaintiff Owners' Complaint was challenging the BZA's authority to act on the administrative appeals, citing to *Indiana Department of Environmental Management v Twin Eagle LLC*, 798 N.E.2d 839 (Ind. 2003), where our Supreme Court had carved out an exception to the exhaustion requirement "if an action is brought upon the theory that [an] agency lacks the jurisdiction to act in a particular area." *Id.* at 844; *Town Defendants' App.* Vol. II at 4.

[40] The standard of appellate review of a trial court's grant or denial of a motion to dismiss pursuant to Trial Rule 12(B)(1) is a function of what occurred in the trial court. *Cmty. Hosp. v. Avant*, 790 N.E.2d 585, 586 (Ind. Ct. App. 2003). The standard of appellate review is dependent upon whether the trial court resolved disputed facts. *Id.* If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law, and no deference is afforded to the trial court's conclusion. *Id.* Where, as here, the relevant facts are not in dispute, we review the trial court's April 8 Order and its determination regarding subject matter jurisdiction de novo.

[41] On appeal, Town Defendants argue that the trial court erred in denying their motion to dismiss because Indiana law required Plaintiff Owners to fully

participate in the BZA's administrative decision appeal process before asking for declaratory and injunctive relief via the Complaint: "[Plaintiff Owners'] proper course was to participate in the BZA hearing, receive a decision, and then file a petition for judicial review of any adverse decision[.]" *Town Defendants' Br*. at 22-23. Town Defendants assert, "Ultimately, the trial court recognized this" in the subsequent July 5 Order, but "it was error to deny the [Motions] to Dismiss." *Town Defendants' Reply Br*. at 8-9.

[42] Amicus IACT and IMLA maintain that Plaintiff Owners' Complaint was an attempt to circumvent Indiana's zoning laws. They urge, "The existing zoning statutes have been enacted to promote uniformity among planning and zoning powers in Indiana in addressing the myriad issues which arise" and that allowing an end-run around the zoning administrative process would "undermine[] the zoning administrative process upon which municipal governments throughout this State rely and invites parties wary of presenting an appeal before a [BZA] to directly sue municipalities to attain the outcome desired." *Amicus IACT and IMLA Br*. at 9, 16-17.

[43] Under Indiana law, "It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts," as "failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction." *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000). As stated by the Indiana Supreme Court in *Twin Eagle*:

We have repeatedly emphasized the value of completing administrative proceedings before resorting to judicial review. The reasons for this requirement are well established:

(1) premature litigation may be avoided; (2) an adequate record for judicial review may be compiled; and (3) agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of the complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion of administrative remedies may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues.

798 N.E.2d at 844 (citations omitted).

[44]     Town Defendants, LBCA, and Neulieb, as well as Amicus IACT and IMLA, argue that Indiana Code section 36-7-4-918.1 ("Section 918.1") and Long Beach Ordinance 154.153(A)(1) not only authorized but also required the BZA to review the administrative appeals. Section 918.1 states:

[A] board of zoning appeals shall hear and determine appeals from and review:

(1) any order, requirements, decision, or determination made by an administrative official, hearing officer, or staff member under the zoning ordinance;

(2) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of the zoning ordinance; or

(3) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of an ordinance adopted under this chapter requiring the procurement of an improvement location or occupancy permit.

Long Beach Ordinance 154.153(A)(1) similarly provides:

> The Board of Zoning Appeals shall have the following powers and it shall be its duty to: (1) hear and determine appeals from and review any order, requirements, decision, or determination made by an administrative official or staff member made in relation to the enforcement of the zoning ordinance, subdivision ordinance, and the enforcement of the building and occupancy permits as adopted under IC 36-7 et seq. and all sections therein applicable.

*Neulieb App*. Vol. II at 67.

[45] They further contend that Indiana Code sections 37-7-4-1600 through -1616, sometimes referred to as the "1600 series," provide the method for appealing decisions of zoning boards. Indiana Code section 37-7-4-1601(a) states that it "establishes the exclusive means for judicial review of zoning decisions[.]" Ind. Code § 36-7-4-1601(a). Under section 1605, a petitioner must challenge a final zoning decision within thirty days of the zoning decision. I.C. § 36-7-4-1605. "[Failure] to timely object to a zoning decision or timely petition for review of a zoning decision within [30 days] waives the person's right to judicial review[.]" I.C. § 36-7-4-1604.

[46] Both sides of the divide – Plaintiff Owners on one side and Town Defendants, LBCA, and Neulieb on the other– cite to the 1600 series as providing an orderly review of zoning decisions, alleging that the other failed to follow it. Plaintiff Owners claim that seawall objectors, including LBCA and Neulieb, filed administrative appeals of the issuance of building permits rather than properly appealing the December 8, 2015 final order of the BZA that approved the view variance. According to Plaintiff Owners, the time to challenge the BZA's December 8, 2015 decision expired on January 7, 2016, which Defendants failed to do so, and, thus, the December 8 decision is res judicata and cannot be relitigated; Plaintiff Owners characterize the administrative appeals as "collateral attacks" on the "final" December 2015 BZA decision. *See Appellants' Br*. at 10, 27, 44.

[47] Town Defendants, LBCA, and Neulieb maintain, however, that the December 2015 BZA decision approved only a view variance for each property and that none of the Defendants opposes the grant of the view variance. Hence, they did not appeal it. Rather, their challenge is to the subsequently-issued *building permits* on the basis that the permits were required to, but did not, comply with all Long Beach ordinances, and administrative appeals of Building Permit decisions to local BZAs are authorized by Section 918.1 and Long Beach Ordinance 154.153(A)(1). They argue that their administrative appeals address entirely different ordinances than those addressed by the December 2015 variance and, thus, are not "collateral attacks" on a previously issued variance.

[48] Furthermore, Town Defendants, LBCA, and Neulieb argue, and Amicus IACT and IMLA agree, Plaintiff Owners should have, but did not, follow the 1600 series to appeal the issuance of stop work orders and, instead, filed the Complaint. That is, on March 17, 2016, the Building Commissioner issued a second set of stop work orders, which prevented the construction of a "structure" in the area of the side-yard setback, and Plaintiff Owners did not file an administrative decision appeal of the stop work orders or apply for a developmental standards variance, which are remedies that Town Defendants maintain should have been exhausted before filing the Complaint. Amicus IACT and IMLA contend, "[Plaintiff Owners] filed suit for declaratory judgment and sought preliminary injunctive relief before the administrative process was complete and entirely outside of [the] orderly, statutorily prescribed process[,]" and by doing so, they "attempt[ed] to circumvent the process required by Indiana's zoning scheme — a process administered in one fashion or another by virtually every municipal government in Indiana with planning and zoning jurisdiction." *IACT and IMLA Br.* at 6. Therefore, they argue, Plaintiff Owners' Complaint should have been dismissed.

[49] Town Defendants suggest to us that a case "squarely on point," and in support of their position, is *Barnette v. U.S. Architects LLP*, 15 N.E.3d 1 (Ind. Ct. App. 2014). *Town Defendants' Br.* at 23. In *Barnette*, homeowners Albert and Julie Bowen hired U.S. Architects to design what the Carmel Department of Community Services ("the Department") called an "accessory building" on their residential property in Carmel, Indiana. *Barnette*, 15 N.E.3d at 3. U.S.

Architects designed the building and submitted plans for a building permit, and the Department issued a building permit in February 2010.[23] The Bowens constructed the accessory building, and in October 2010, the Department issued a certificate of occupancy. *Id.* at 4. After construction was complete, the Barnettes, who were the next-door neighbors of the Bowens, complained to the Department about the height of the building because they believed it was too tall in violation of the zoning code ordinance applicable to accessory buildings. *Id.* at 4-5. The Department reviewed the complaint and sent the Bowens a letter in March 2011 that read in part, "Upon review, it has come to our attention this complaint is valid. We believe the original building permit was issued in error. According to the building permit plans that were submitted the structure is eight feet taller than is permitted. In order to comply . . . it will be necessary for you to file an application for a Developmental Standards Variance." *Id*. at 5. The Bowens applied for a variance with the BZA, and after a public hearing, the BZA denied the variance request. *Id.* The Bowens did not administratively appeal the Department's March 2011 determination that their building was too tall nor did they appeal the BZA's April 2011 denial of a variance. In June 2011, the Department notified the Bowens that their building violated the

---

[23] The building permit contained the following language: "THE BUILDING OFFICIAL IS PERMITTED TO SUSPEND OR REVOKE THIS CERTIFICATE OF OCCUPANCY BASED ON ANY OF THE FOLLOWING: 1. WHEN THE CERTIFICATE HAS BEEN ISSUED IN ERROR; 2. WHEN THE INCORRECT INFORMATION IS SUPPLIED; 3. WHEN THE BUILDING IS IN VIOLATION OF THE CODE." *Barnette v. U.S. Architects, LLP*, 15 N.E.3d 1, 4 (Ind. Ct. App. 2014).

height ordinance and that the Department would be withdrawing the certificate of occupancy. The Bowens did not appeal that decision.

[50] In September 2011, the Bowens and U.S. Architects filed a complaint for declaratory relief against the Department and the BZA (together, "the City of Carmel"), seeking an interpretation of the ordinance at issue and a determination that their building complied with it. *Id.* at 6. The City of Carmel filed a motion for judgment on the pleadings, asserting, among other things, that the Bowens failed to exhaust administrative remedies; the Barnettes intervened and joined the City of Carmel's motion. The Bowens and U.S. Architects filed a motion for summary judgment.

[51] The trial court denied the City of Carmel's motion for judgment on the pleadings, and it granted the Bowens' requested relief, finding that the Department violated their due process rights and that the Department should be estopped from revoking the certificate of occupancy. *Id*. at 7. The trial court ordered the City of Carmel to immediately reissue the Certificate of Occupancy or to provide just compensation because of the due process violation. *Id.*

[52] The Barnettes appealed and asserted that the declaratory judgment action should be dismissed for lack of subject matter jurisdiction because the Bowens failed to exhaust their administrative remedies. This court agreed. After noting that, instead of filing a motion for judgment on the evidence, "[T]he City should have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1)" the *Barnette* court held that the trial

court should have dismissed the Bowens' declaratory judgment complaint because they failed to exhaust their administrative remedies. *Id.* at 8. In doing so, the *Barnette* court stated, "[T]he Bowens had two opportunities to appeal from and be heard on the [Department]'s determination that their accessory building is too tall and an opportunity to appeal from and be heard on the BZA's denial of a variance, and they failed to take advantage of any of those opportunities." *Id*. at 11.

[53] In this appeal, Town Defendants maintain that, "consistent with this [c]ourt's holding in *Barnette*," the Plaintiff Owners' "failure to exhaust administrative remedies should have resulted in a dismissal under Trial Rule 12(B)(1)." *Town Defendants' Br*. at 26. We agree and find it was error for the trial court in the present case not to dismiss Plaintiff Owners' Complaint on this basis.

[54] Plaintiff Owners do not dispute the exhaustion doctrine, but argue that they should nevertheless be excused from exhausting their administrative remedies based on limited exceptions to the exhaustion doctrine. For instance, Plaintiff Owners maintain that the trial court, when determining in its April 8 Order that it had jurisdiction, properly referred to and relied upon *Twin Eagle*, which carved out an exception to the exhaustion requirement. The *Twin Eagle* Court determined that "[t]o the extent the issue turns on statutory construction, whether an agency possesses jurisdiction over a matter is a question of law for the courts[,]" and "[I]f an action is brought upon the theory that the agency lacks the jurisdiction to act in a particular area, exhaustion of remedies is not required." 798 N.E.2d at 844. We disagree that, pursuant to *Twin Eagle*,

Plaintiff Owners were not required to exhaust administrative remedies. In *Twin Eagle*, the trial court was asked a pure question of statutory construction, namely whether IDEM possessed authority to regulate the types of waters at issue; here, there was no issue of statutory construction, and, in fact, Section 918.1 grants the BZA the power and duty to hear administrative appeals and the 1600 series provide the method for appealing decisions of zoning boards. We therefore find that *Twin Eagle* is distinguishable and not controlling of our decision.

[55] Plaintiff Owners also contend that exhaustion of administrative remedies was excused because it would have been futile for them to resort to the administrative process. *See Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 984 (Ind. 2005) (exhaustion of administrative remedies may be excused if the exercise would be futile, which requires showing that "administrative agency was powerless to affect a remedy or that it would have been impossible or fruitless and of no value under the circumstances"). Plaintiff Owners' claim, among other things, is that participating in the BZA administrative process would have been futile because the BZA is comprised of or includes members that are biased against it due to conflicts of interest. Whether conflicts exist is a fact-sensitive matter, to be brought to the attention of the BZA and, in the face of an adverse decision, taken up on judicial review. *See New Trend Beauty Sch. v. Ind. State Bd. of Beauty Culturist Exam'rs,* 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988) (remedy for claims of bias is to proceed before administrative body and make a record, which will give

agency opportunity to correct or prevent error, without judicial interference). To the extent that Plaintiff Owners' claim is that they are sure the BZA would rule against them, "[T]he mere fact that an administrative agency might refuse to provide the relief requested does not amount to futility." *Johnson,* 829 N.E.2d at 984.

[56] As the *Barnette* court observed, "'[w]here an administrative remedy is readily available, filing a declaratory judgment action is not a suitable alternative.'" *Barnette*, 15 N.E.3d at 9 (quoting *Carter v. Nugent Sand Co.*, 925 N.E.2d 356, 360 (Ind. 2010)). Similarly, Indiana courts have recognized that a trial court has no jurisdiction to enter a preliminary injunction where a party has failed to exhaust his or her administrative remedies. *See Lake Cty. Sheriff's Corr. Merit Bd. v. Peron*, 756 N.E.2d 1025, 1029 (Ind. Ct. App. 2001) (trial court lacked subject matter jurisdiction to issue preliminary injunction where parties failed to exhaust administrative remedies).

[57] We conclude that Plaintiff Owners failed to exhaust their administrative remedies before filing their Complaint for declaratory and injunctive relief, and, therefore, we reverse the trial court's April 8 Order that denied the motions to dismiss.[24]

---

[24] Because we find that the trial court lacked subject matter jurisdiction, we do not reach LBCA's and Neulieb's other cross appeal issues asserting that the trial court should have dismissed the Complaint under Indiana's anti-SLAPP statutes, nor do we reach Plaintiff Owners' appellate claims challenging the July 5 Order denying injunctive and declaratory relief.

Reversed.

Robb, J., and Barnes, J., concur.